NATHAN BOHM et al., Respondents, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY et al., Appellants.

PETER SOMERS, Respondent, *v.* THE SAME, Appellants.

Where, in an action to restrain the operation of an elevated railroad in a city street in front of plaintiff's premises, the defendant is allowed to pay the permanent or fee damages in lieu of an injunction, the damages to be allowed are such and only such as would be given in a proceeding for condemnation of lands for railroad purposes.

The rule of damages in condemnation proceedings is the full value of the land taken, at the market price, with no deductions for any purpose whatever; and as to the land remaining, if it appears that its value will be depreciated by the proposed use, this depreciation may be awarded as part of the consequential damages suffered.

An abutting owner, by reason of his situation, has certain rights and privileges in a city street termed easements, which are appurtenant to his land, and are a species of property. The beneficial enjoyment of these easements is interfered with by the erection and operation of an elevated railroad in the street. This interference is a taking of them *pro tanto*, and entitles the owner to payment therefor, and in addition the damage done his adjoining land.

As, however, these easements are of no value in and of themselves separated from the land, the real and only damage, if any, suffered by the owner in any particular case is a consequential one, *i. e.*, the effect produced upon his abutting land.

The question is simply as to the actual result upon the land remaining, *i. e.*, has the actual market value been decreased by the taking, or has it prevented an enhancement in value greater than has actually occurred; and if so, to what extent? The damage defendant may be required to pay is the difference between the actual market value of plaintiff's land and what it would have been worth if the railroad had not taken the other property, *i. e.*, the easements.

Where, therefore, it appears that there has been neither a decrease in value nor any prevention of an increase caused by the railroad, plaintiff is entitled only to nominal damages.

So, also, *it seems*, where it appears that the plaintiff's abutting land has actually increased in value, unless it is shown that but for the acts of the defendants in taking the easements, it would have grown still more in value, no damage is proved.

It is not essential to show that plaintiff has received benefits from the taking special and peculiar to his land, not shared in generally by other abutting owners.

Accordingly *held*, as it appeared by the uncontradicted evidence that there was an increase in value of all the lands abutting on the street, including plaintiff's, since the construction of defendants' road, and that the road largely caused the increase, an allowance of substantial damages was error.

Also *held*, the fact that other property in the vicinity of plaintiff's and in the side streets had been more than proportionally increased in value by reason of defendants' road, was not material.

*Francis* v. *Schoellkopf* (53 N. Y. 152), distinguished and explained.

In such an action the uncontradicted evidence showed, and the defendants' counsel requested the court to find, that the existence and operation of the railroad had greatly increased the population of the locality in which plaintiff's property is situated, and has brought traffic into the street, and thereby plaintiff's property has been incidentally benefited, and that there has been a general rise in the value of the real estate along the street, largely attributable to the road. The court refused so to find, and defendants excepted. Defendants also moved for a dismissal of the complaint on the merits, upon the ground, among others, that it appeared plaintiff's property had been benefited by the road, and had, by reason thereof, increased in value since its erection, which motion was denied and exceptions taken. The court found that plaintiff had sustained damage to an amount stated. *Held*, that the exceptions were sufficient to bring up the question as to whether the court had adopted the proper rule of damages.

(Argued December 8, 1891; decided January 20, 1892.)

APPEAL in each of the above-entitled cases from a judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of February, 1891, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

These two cases were argued together as involving the same questions.

The plaintiff Somers was the owner by conveyance to him in March, 1882, of certain premises known as numbers 2271 and 2273 on Second avenue in that city, and between One Hundred and Sixteenth and One Hundred and Seventeenth streets. He alleged that the defendants had unlawfully interfered with, trespassed upon and illegally taken his easements (or some portion thereof) of light, air and access to his prop-

erty by the illegal erection and operation of their elevated railway in such avenue. He demanded judgment restraining defendants from further maintaining their structure in front of his premises and compelling them to remove the same. He also asked to recover the amount of his damage already sustained by reason of the maintenance and operation of the road past his premises, and that if defendants were permitted to maintain and operate the road in the future it should only be upon the condition that they should pay plaintiff the amount of the permanent loss he would suffer by reason of such maintenance and operation.

The plaintiff Bohm made substantially the same allegations in relation to his property, which was also situated on Second avenue and a short distance from plaintiff Somers.

The defendants answered and particularly put in issue the allegations in the complaint in each case as to the damages resulting from the acts of defendants.

Both actions were tried at a Special Term of the court without a jury, and the court, among other matters, found the following facts. They are in substance the same in each case:

In the *Somers* case the defendants were duly incorporated, and before they proceeded to construct their railroad through Second avenue they obtained the authority of the legislature and the consent of the municipal authorities of the city of New York to do so, but such authorization did not entitle them to take the property of plaintiff without compensation. In 1883, and prior to April first, the plaintiff erected on his lots two large and valuable brick buildings, and to them and to the lots on which they rested were attached as appurtenant thereto certain easements of light, air and access from Second avenue. Since April 1, 1883, the elevated railway structure of defendants has greatly cut off the light, air and access which otherwise would have come to plaintiff's premises from that avenue. By the acts of defendants in depriving the plaintiff in part, of the beneficial use and enjoyment of his easements above mentioned from April, 1883, to the time of trial, April, 1890, the rental value of plaintiff's premises has been reduced twenty-

one hundred dollars, and the plaintiff has sustained a loss thereby to that amount. The damage is of a continuous character, arising from the maintenance and operation of the road by defendants. The road was opened for public use in March, 1880, and has been ever since so maintained and operated. The permanent damage caused by the operation and maintenance of defendants' road was found to be $3,000, upon payment of which no injunction was to issue. The money was only to be paid in case the plaintiff conveyed to the defendants all the rights and easements appurtenant to his lots, which had been taken by them.

In the *Bohm* case the same general facts were found, differing only as to the different lots and as to the amount of damages.

Further facts are stated in the opinion.

*John F. Dillon, Julien T. Davies* and *Samuel Blythe Rogers* for appellants. The learned trial judge decided the case upon an erroneous theory, by endeavoring to ascertain how much plaintiff would have been injured, if he had not been benefited, and by charging defendants with the constructive damage thus imagined. (*Kennedy* v. *Porter,* 109 N. Y. 526, 534; *Andrews* v. *Raymond,* 58 id. 676; *Becks* v. *Sheldon,* 48 id. 369; *Smith* v. *G. F. Ins. Co.,* 62 id. 87; *James* v. *Cowing,* 82 id. 449, 457; *McGean* v. *M. R. Co.,* 117 id. 219; *Starbird* v. *Barrows,* 43 id. 200; Laws of 1850, chap. 140, § 16; Laws of 1875, chap. 606, § 20; *In re Furman St.,* 17 Wend. 649, 670; *T. & B. R. Co.* v. *Lee,* 13 Barb. 169, 171; *In re Utica, etc., R. Co.,* 56 id. 456, 464; *People ex rel.* v. *Eldridge,* 3 Hun, 541, 543; *Henderson* v. *N. Y. C. R. R. Co.,* 78 N. Y. 423, 433; *In re W. S., etc., R. Co.,* 29 Hun, 609, 611, 612; *Drucker* v. *M. R. Co.,* 106 N. Y. 157; *In re B. E. R. Co.,* 55 Hun, 165.) The method of computing consequential damages, for which we contend, is not inconsistent with any statute, nor with the Constitution. (Laws of 1850, chap. 140, § 16; Laws of 1875, chap. 606, § 20; *Newman* v. *M. E. R. Co.,* 118 N. Y. 618; *Pond* v. *M. E. R. Co.,* 42 Hun, 567; *Uline* v. *N. Y. C. R.*

*R. Co.*, 101 N. Y. 98; *In re B. E. R. Co.*, 55 Hun, 165.)
It has been firmly established in this state that in computing
consequential damages, all the advantages and disadvantages
of the railway are to be considered. (*Radcliff* v. *Mayor, etc.,*
4 N. Y. 195; *Fobes* v. *R., W. & O. R. R. Co.*, 121 id. 505;
*A. N. R. Co.* v. *Lansing*, 16 Barb. 68; *T. & B. R. Co.* v.
*Lee*, 13 id. 169, 171 ; *In re U., etc., R. Co.*, 56 id. 456, 464;
*People ex rel.* v. *Eldridge*, 3 Hun, 541, 543; *B. R. R. Co.*
v. *Barnard*, 9 id. 104, 105, 106 ; *In re N. Y. C. R. R. Co.*,
v. *Judge*, 15 id. 63 ; *Henderson* v. *N. Y. C. R. R. Co.*, 78
N. Y. 423, 433 ; *In re N. Y., L. E. & W. R. Co.* v. *Arnot*,
27 Hun, 151, 155 ; *In re N. Y., L. & W. R. Co.*, 29 id. 1, 3 ;
*In re W. S., etc., R. Co.*, Id. 609, 611, 612; *Drucker* v. *M.
R. Co.*, 106 N. Y. 157 ; *In re N. Y., L. E. & W. R. Co.*,
v. *Miller*, 49 Hun, 542; *In re B. E. R. Co.*, 55 id. 165, 166,
167 ; *Newman* v. *M. E. R. Co.*, 118 N. Y. 618, 624, 625,
626.) The supposed distinction between general and special
benefits has never been recognized in this state. (Lewis on
Em. Domain, § 479 ; Const. art. 1, § 6; *Livingston* v. *Mayor,
etc.*, 8 Wend. 85; *Rexford* v. *Knight*, 15 Barb. 627, 641;
*Burbank* v. *Fay*, 65 N. Y. 57, 64; *Whitney* v. *State*, 96 id.
240; *Hillbourne* v. *Suffolk Co.*, 120 Mass. 393, 394; *Carson*
v. *Coleman*, 11 N. J. Eq. 106, 108 ; *Carpenter* v. *Landaff*, 42
N. H. 218, 221 ; *Arbrush* v. *Town of Oakdale*, 28 Minn. 61;
*Schaller* v. *Omaha*, 36 N. W. Rep. 533; *Dougherty* v. *Brown*,
3 S. W. Rep. 210 ; *Newby* v. *Platte Co.*, 25 Mo. 258, 276.)
The fact that plaintiff's neighbors on the side streets may have
been benefited more than he, is no reason for enhancing the
award herein. (*Livingston* v. *Mayor, etc.*, 8 Wend. 85; *J.
R. Co.* v. *Turner*, 9 Leigh, 313; *C. & P. R. R. Co.* v.
*Francis*, 70 Ill. 238; *O. C. R. R. Co.* v. *Wait*, 3 Ore. 91; *H.
& N. R. R. Co.* v. *Dickinson*, 17 B. Mon. 173; *Young* v.
*Harrison*, 17 Ga. 30.) It is impossible to apply practically
any other rule than a determination of the effect of all the
advantages and disadvantages of the railway. (*Page* v. *C.,
etc., R. Co.*, 70 Ill. 324; *L. R. & W. R. R. Co.* v. *Ross*, 40
Kan. 598.) In other states, benefits of no sort are disregarded

in computing consequential damage, except in obedience to the requirements of the Constitution or some statute. (*A., etc., R. Co.* v. *Burkett,* 42 Ala. 83; *Hooper* v. *S., etc., R. R. Co.,* 69 id. 529; *S. L., etc., R. Co.* v. *Anderson,* 39 Ark. 167; Code Civ. Pro. § 1248; *C. P. R. Co.* v. *Armstrong,* 46 Cal. 85; *S. F., etc., R. Co.* v. *Caldwell,* 31 id. 367; *Tehama* v. *Bryan,* 68 id. 57; *Trinity College* v. *City of Hartford,* 32 Conn. 452; *Wilcox* v. *City of Meriden,* 57 id. 120; *Whitman* v. *W. & S. R. R. Co.,* 2 Har. 514; *Young* v. *Harrison,* 17 Ga. 30; *Jones* v. *W. V. R. R. Co.,* 30 id. 43; *C. & P. R. R. Co.* v. *Francis,* 70 Ill. 238; *Page* v. *C. M. & S. P. R. R. Co.,* Id. 334; *Symonds* v. *City of Cincinnati,* 14 Ohio, 147, 173; *Brown* v. *City of Cincinnati,* Id. 541; *Cramer* v. *C. & P. R. Co.,* 5 Ohio St. 140, 145; *C., etc., R. Co.* v. *Sampson,* Id. 251, 253; *Woodfall* v. *N., etc., R. R. Co.,* 2 Swan. 422; *P., etc., R. Co.* v. *Stovall,* 12 Husk. 1; *J. R., etc., Co.* v. *Turner,* 9 Leigh, 313; *E. B., etc., R. Co.* v. *Rank,* 78 Penn. St. 454; *G., etc., R. Co.* v. *Partlow,* 5 Rich. 428; *C., etc., R. Co.* v. *Longworth,* 30 Ohio St. 108.)

*Charles Gibson Bennett* for respondents. Under the provision of the Constitution, as construed by the courts, and the provisions of the General Railroad Act and the Rapid Transit Act, in estimating the compensation to be made for private property taken for public use by a private railroad corporation, benefits or advantages from the proposed improvement cannot be considered or set off. (*Genet* v. *City of Brooklyn,* 99 N. Y. 296; *People* v. *Mayor, etc.,* 4 id. 419; *Rexford* v. *Knight,* 15 Barb. 627; Const. N. Y. art. 1, § 6; Laws of 1850, chap. 140; Laws of 1875, chap. 606, § 20; *Frederick* v. *Shane,* 32 Iowa, 254; *M. E. R. Co.* v. *Dominick,* 55 Hun, 198; *S. A. R. R. Co.* v. *Kerr,* 72 N. Y. 330; 104 id. 268; 106 id. 157; *Francis* v. *Schoellkopf,* 53 id. 152; *Tillotson* v. *Smith,* 32 N. H. 90; *Marcy* v. *Fries,* 18 Kans. 353; *Sanderson* v. *P. C. Co.,* 102 Penn. St. 370; *Talcot* v. *Whipple,* 7 Gray, 122; *Gile* v. *Stevens,* 13 id. 146; *Armstrong* v. *City of St. Louis,* 69 Mo. 309; *Eagle* v. *C. C. R. W. Co.,* L. R. [2 C. P.] 638.) In

estimating the damage to the land not taken, it is not admissible to make an allowance for general benefits; that is, benefits which merely affect the market value of the land not taken, in common with other land in the locality, but not at all its direct physical use and enjoyment. (35 Hun, 260; *N. E. Bank* v. *M. E. R. Co.*, 21 J. & S. 311; 108 N. Y. 660; 121 id. 119; *J. M. & I. R. R. Co.* v. *Esterle*, 41 Bush. 667; *Palmer Co.* v. *Ferrill*, 17 Pick. 58; *Brown* v. *R. R. Co.*, 5 Gray, 35; *Payne* v. *Woods*, 108 Mass. 160; *Hilbourne* v. *County of Suffolk*, 120 id. 393; *Nicholson* v. *N. Y. & N. H. R. R. Co.*, 22 Conn. 74; *Meacham* v. *R. R. Co.*, 4 Cush. 392.)

PEOKHAM, J.   The defendants seek upon these appeals to obtain from this court some decisive statement as to the rule which should obtain in actions like these, in arriving at the amount of damages which should be paid by defendants to abutting lot owners on account of the building and maintenance of defendants' roads in the city of New York.  To that end they have waived every other exception in the cases.

There are, it is said, large numbers of cases in which the decision of the question is of the greatest importance to both parties.

The defendants claim that if the correct rule for the ascertainment of damages had been followed in these cases, the uncontradicted evidence showed that plaintiffs had not sustained any damage whatever.   At the outset the plaintiffs' counsel sets up a bar to our entering upon an examination of the subject by alleging that the question is not raised, and that there is no exception which brings the matter before us.

In the *Somers* case the defendants requested the court to find as follows :

" *Twentieth.*  The existence and operation of the defendants' railroad in Second avenue has greatly increased the population of the locality in which the plaintiff's property is situated, and has brought traffic into Second avenue.   The plaintiff's property has thereby incidentally been benefited.

" *Twenty-first.*  Since the year 1880, there has been a general

rise in the value of real estate situated upon Second avenue, and this increase in value is largely attributable to the existence and operation of the defendants' railroad."

Substantially the same requests were made in the *Bohm* case. These requests the defendants state are founded upon uncontradicted evidence.

Upon a careful perusal of the evidence in the case, I think this contention is well founded. The court refused to make the findings as requested and the defendants excepted.

Motions were made by the defendants in each case for a dismissal of the complaint on the merits, because, among other grounds, it appeared the plaintiff's property had been benefited by the railroad and had increased in value since its erection and by reason thereof. The motions were denied and exceptions taken.

We think, upon the whole, that the question was sufficiently raised. It is true that exceptions are unavailing when they are taken to the refusal of a judge to find as facts matters which are merely evidence and which are immaterial. In these cases, however, we must remember that the sole question at issue between the parties upon this branch of the case was as to the proper rule to be observed in ascertaining the amount of damages the plaintiffs had sustained, if they had sustained any.

The amount of damages would be materially affected by the rule which should be observed in determining their existence. And yet in making the bare finding of the amount of damage sustained, it would not appear that any particular rule had been followed, and hence it would not appear that any erroneous rule had been adopted. It might in some cases be urged, perhaps, that there was no evidence upon which to base a finding of damage, if a correct rule had been adopted, and yet a perusal of the testimony might show some slight amount, and hence the exception would fail. The judgment might at the same time be really founded upon the incorrect rule.

There would, in almost any event, be a difficulty in determining whether a wrong rule had or had not been adopted.

If it were a trial by jury, the judge would be requested to instruct the jurors as to the true rule, and an exception would lie to his refusal and to the rule actually adopted and the question brought up in that way. In a trial before the court it is more awkward. The requests in these cases were to find certain facts which had been established by uncontradicted evidence, and upon those facts the defendants seek to draw an inference in the nature of a conclusion of fact or of law, or both, that the plaintiffs have sustained no damage. The court has in truth refused to find the facts as requested, and such refusal added to the circumstance that he has found the plaintiffs have sustained substantial damages and to an amount stated by him, leads to the inevitable conclusion that he refused to find them, because they were in his judgment immaterial. A request to find that the plaintiffs had sustained no damage, or a motion for a nonsuit on the ground that no damage had been proved, might not alone bring up the question. Taking all the means together, which the defendants adopted in their perfectly legitimate attempt to bring up for review the question as to what is the proper rule of damages in these cases, we must say that if their able counsel has not yet succeeded, it is difficult to see how success in that line can be achieved hereafter.

Without overruling the cases upon the subject of exceptions to refusals to find upon mere matters of evidence, we think the cases before us are distinguishable. The question sought to be raised here is so difficult of presentation by way of exception or request upon a trial before a court or referee, and is withal so important, that we are disposed to say the various requests to find and the exceptions taken to the judge's refusals, together with the motion for a nonsuit on the ground that no damage had been proved, and the exceptions taken to the denial of such motion, should in these cases and under the circumstances be regarded as sufficient to enable us to review and pass upon the question on its merits. Justice we think demands this.

Although these are suits in equity, commenced to obtain

equitable relief and to prevent the defendants from operating their road unless they pay the plaintiffs the damages they will sustain from the permanent interference by the railroad with their easements of light, air and access, yet the rules upon which such damages are to be awarded are so far well settled as to enable us to say that those damages are only such as would be given in a proceeding for the condemnation of lands for a railroad use, regard being had to the different characteristics of the property to be taken in these cases.

The rule was last announced in this court in the recent case of *American Bank Note Co.* v. *New York Elevated R. R. Co.*,* not yet reported. What rule obtains in this state in proceedings to condemn the kind of property which has been taken by the defendants in these cases is now made the subject of inquiry. Generally in taking land the rule may be said to be to pay the full value of the land taken at its market price, and no deductions can be made from that value for any purpose whatever. Then as to the land remaining, the question has been to some extent mooted, whether the company should pay for the injury caused to such land by the mere taking of the other property, or whether, in case the proposed use of the property taken would depreciate the value of that which was not taken, such proposed use could be regarded and the depreciation arising therefrom be awarded as part of the consequential damages suffered from the taking. I think the latter is the true rule. (*Henderson* v. *C. R. R.*, 78 N. Y. 423, 433; *Newman* v. *R. R.*, 118 id. 618; *In re Petition Brooklyn R. R.*, 55 Hun, 165, 167.) The case of *In re Petition N. Y. Elevated R. R.*, etc. (36 Hun, 427) is cited for the other rule. The question might be of great importance where there was an injury to the remaining land, but if there have been no injury, the inquiry as to the scope of the liability for damages is not material. There is no question made but that the defendants are liable to pay the full value of any property taken by them subject to no deduction whatever. How the value of the

*Ante,* page 252.

particular kind of property which is here taken shall be
arrived at is the main, and indeed the only, question in these
cases.    Included in this inquiry and growing out of it arises the
question, shall only special benefits to the remaining property
be regarded, or may what is termed general benefits be also
taken into consideration ?    Before entering on a discussion of
these matters I think it proper to say that I should hesitate to
admit the correctness of the claim made by defendants,
that where private property is taken by a mere business cor-
poration, as for a public use under the granted power of
eminent domain, the legislature could provide that such prop-
erty could be paid for by benefits accruing to the land owner's
adjacent property consequent upon the taking.    This is the
case in regard to municipal corporations where land is taken
for a public street, or other public and municipal purpose, and
where the benefits arising to the adjacent lands of the owner
whose property is taken, may be set off against the value of
the land taken.    So in the case of property taken by the state
for canal or other public purposes, where the owner of the land
taken was frequently paid its value by the benefits received to
his adjacent land not taken.    The principle underlying these
cases is, however, the right of the municipality or state to tax
the owners of the land left, in order to pay for the land taken,
on the ground that they are specially benefited by the taking,
and hence should be specially taxed for the payment of the
land.    The case of *Genet* v. *City of Brooklyn* (99 N. Y. 296)
is no authority for a contrary view, for I think it supports that
which I have suggested.    A mere trading or business corpora-
tion has no power of taxation, and the state could not delegate
such power to it.    If such company desire another's property,
it must pay a just compensation for it, and that just compen-
sation would not consist in its doing the owner some benefit
upon his remaining property.    The question, although argued
by appellant's counsel, or rather perhaps stated, becomes unim-
portant, and is, therefore, undecided here, because the statute
provides for just compensation for the property taken, and
prohibits any deduction therefrom on account of real or sup-

posed benefits accruing to the property which is not taken.
The defendants, so far as regards this question, make no claim
of restricted liability to pay such full value.

In determining the question now presented, it is well to
recur briefly to the character of the property which is taken,
and the circumstances under which it has been taken.

The plaintiffs own no land in the street. Their ownership
of the land is bounded by the exterior lines of the street itself.
Hence when, under legislative and municipal authority, the
railroad structure was built, it was supposed by many there was
no liability to abutting owners, because no land of theirs was
taken, and any damage they sustained was indirect only, and,
therefore, *damnum absque injuria.* When the courts acquired
possession of the question, and it was seen that abutting land,
which before the erection of the road was worth, for instance,
ten thousand dollars, might be reduced to a half or a quarter
of that sum in value, or even rendered practically worthless by
reason of the building of the road, it became necessary to
ascertain if there were not some principle of law which could
be resorted to in order to render those who wrought such dam-
age liable for their work. It has now been decided that,
although the land itself was not taken, yet the abutting owner,
by reason of his situation, had a kind of property in the public
street for the purpose of giving to such land facilities of light,
of air and of access from such street. These rights of obtain-
ing for the adjacent lands facilities of light, etc., were called
easements, and were held to be appurtenant to the land which
fronted on the public street. These easements were decided
to be property, and protected by the Constitution from being
taken without just compensation. It was held that the defend-
ants, by the erection of their structure and the operation of
their trains, interfered with the beneficial enjoyment of these
easements by the adjacent land owner and in law took a portion
of them. By this mode of reasoning, the difficulty of regard-
ing the whole damage done to the adjacent owner as conse-
quential only (because none of his property was taken), and,
therefore, not collectible from the defendants, was overcome.

The interference with these easements became a taking of them *pro tanto*, and their value was to be paid for, and in addition the damage done the remaining and adjoining land by reason of the taking was also to be paid for, and this damage was in reality the one great injury which owners sustained from the building and operation of the defendants' road.   For the purpose of permitting such a recovery, the taking of property had to be shown.   The cases of *Story, Lahr, Drucker, Abendroth* and *Kane* (the last of which is reported in 125 N. Y. 164, and in which the others are referred to), finally and completely settled these matters.

It seems to me plain, from this review of the law, that the real injury (if any) suffered by the land owner in any particular case, lies in the effect produced upon his abutting land by the wrongful interference of defendants with these easements of light, air and access to such land.   And where they are interfered with, and in legal effect taken to any extent, it is not possible to think of them as of any value in and of themselves separated from the adjoining land, but their value is to be measured by the injury which such taking inflicts upon the land which is left, and to which they were appurtenant.

This is a consequential damage.   It is not the light or the air that is valuable separated from the land adjoining.   With regard to the subject under discussion there is and can be no value in a given quantity of air, or space, or light in the public street except as it may be used in connection with and as appurtenant to the abutting land.   When a person interferes with such light, air or access and takes it, he takes nothing which is alone and intrinsically valuable, but only as its loss affects the adjoining land.   This loss while purely consequential is, nevertheless, a liability which the person proposing to take the property is bound to discharge.

The rule which the counsel for the plaintiffs contends for is a pure abstraction and liable in many instances to cause injustice in its application, because it would fly in the face of the actual facts.   Easements, he says, are worth exactly the amount which they add to the value of the premises to which they are

appurtenant, and no reference to the particular agency by which the taking or interference with such easements has been accomplished should be permitted, even for the purpose of determining the damage that has been thereby caused. The pure abstraction of a curtailment or destruction of the easement must be indulged in and no effect other than such curtailment or destruction upon the property left is to be regarded. Carrying out this principle it might appear that a lot on Second avenue with its easements of light, air and access unimpaired would be worth $5,000. To deprive it in some undefined way other than by defendants, of a portion of such easements equal to the amount taken by the defendants might detract from the value of the lot $2,500. Therefore, $2,500 is the value of the easements which the defendants must pay. This is, as I have said, a pure abstraction. No such case exists or can exist. The same property cannot be taken by some other agency and by defendants at the same time. Adopting the theory of the plaintiff's counsel it can be easily seen how in fact the injustice imagined might be perpetrated. A plaintiff after proving that the damage to his property, if the easement had been taken by some process and by some person other than defendants, would upon such hypothesis have been $2,500, might be met by defendants with proof of the fact that he had sustained no damage whatever, and on the contrary, by reason of the erection of the road, he had been specially and peculiarly benefited, his property being in actual fact worth fifty or one hundred per cent more than it was before. Would there not be great injustice in awarding to such an owner $2,500 for damages which in truth he had never suffered? The separate value of light and air upon the facts existing in all these cases can in the nature of things be nothing but nominal. They must be joined to the land to be of value.

A theoretical course of reasoning may be adopted by which it could be claimed, as plaintiff's counsel urges, that the value of these easements in and of themselves is represented by the amount of depreciation in value to the adjoining land their

taking would occasion, with no reference to the agency by which such taking was accomplished. In fact, such value would be arrived at by reference to what was a purely consequential damage to land. If the taking by the railroad actually had the effect of enhancing the value of the remaining land, the inquiry as to the amount of loss that might otherwise have been occasioned (if there had not happened to be the actual benefit), would be the purest guess and speculation in the world, and even when arrived at would be but proof of what might have happened if something else had not occurred which prevented it and caused the contrary to happen. To permit a recovery of this conjectural and wholly theoretical amount of damage which was never sustained would be to legalize a mere raid upon the treasury of defendants.

The real question to be considered is in truth one of damage to the abutting land. (*Newman* v. *Elevated R. Co.*, 118 N. Y. 618.) What facts may be regarded upon such an inquiry has not been finally decided.

In the case of *Newman* (*supra*) a portion of the subject was involved and discussed and we must recognize the authority of that case upon the question actually therein decided. A reference to the report is necessary in order to learn that fact.

That action was brought and tried as one to recover the whole damage in one action which the plaintiff had sustained by reason of the erection and operation of defendants' road in front of his premises in Church, near Rector street. The court was asked to charge the jury " that in estimating the damages to the leasehold interest in this plaintiff caused by the interference by the defendants with the light, air and access appurtenant to the premises, the jury may take into consideration any benefits peculiar to his house which have arisen by the construction of the road as shown by the evidence." The court refused to charge as requested, and said : "On the contrary, the jury have no right to take any such fact into consideration." There was an exception to that refusal and upon appeal this court in the second division held that such refusal

was erroneous and, therefore, the judgment was reversed and a new trial granted.

The so-called Rapid Transit Acts under which the defendants were organized, provided that the commissioners of appraisal should not in determining the amount of compensation make any allowance or deduction on account of any real or supposed benefits which the party in interest may derive from the construction of the proposed railroad. The case of *Newman* decides that this provision does not mean that in examining the question whether injury has resulted to the abutting owner's remaining land by reason of the taking of a portion of the easements spoken of, the court cannot regard the fact that so far from injury the land remaining had been specially enhanced in value by reason of the taking. On the contrary it decides that such fact, of special enhancement in value, is material and may and must be considered upon the question of damage. It is not offsetting injury against benefits. It is discovering whether in reality there has been any injury to the remaining land. To prove that the land has been specially benefited may be proof that it has not been diminished in value. If it would have increased still more in value but for this taking by the road, that difference it must pay because to that extent there would be damage. The *Newman* case is authority for the proposition that the easements are only of nominal value in and of themselves, and that the result of taking them must be looked for in the effect upon the adjoining land. If instead of loss or injury that land has been specially benefited by the taking by the railroad company, then no damage has been sustained by the land owner. Although adding nothing to the weight of the authority of the *Newman* case I must say that as far as it goes the decision receives my unqualified approval. The remarks of the learned judge in the latter part of the opinion as to general benefits from the growth of the city, etc., were no part of the decision itself and were merely suggestions as to matters not really involved in the case. They raise the question as to how far general benefits to the land may be regarded and also whether

assuming them to exist they must have been caused by the railroad company in order to be noticed. I shall add a word or two later on upon that subject. At any rate the case decides that it is a defense to the action to recover damages, if it be proved that in fact the owner's remaining land has been specially benefited by the taking.

In these cases there is no claim that plaintiffs have received benefits from the taking, which were special and peculiar to their lots and not shared in by the owners of lots generally in the avenue. I confess I have been and am wholly unable to see the least materiality in the distinction between what are termed special and general benefits to the property left, or whether such benefits have been caused by the defendants. Strictly speaking it is not a question of benefits at all, except that proof of benefits may be one way of showing there has been no injury. The value of the easements taken, we have seen, was merely nominal, and the sole question which remains is, therefore, has the owner suffered any damage or injury whatever which has been caused by this taking, for if there have been no damage there can be no recovery. To ascertain the fact, whether there has been damage, an excursion into the realms of possibilities as to what might have happened but did not, is not permitted. The inquiry whether the land would have been injured if certain circumstances had not occurred which not only prevented such injury, but enhanced its value, is wholly immaterial. The question is, what in fact has been the actual result upon the land remaining? Has its actual market value been decreased by the taking, or has the taking prevented an enhancement in value greater than has actually occurred, and if so, to what extent? The amount of such decrease in the value of the remaining land, or the amount of the difference between its actual market value and what it would have been worth if the railroad had not taken the other property, is the amount of the damage which the defendants should pay. If on the contrary there has been neither decrease in value caused by the railroad, nor any prevention of an increase from the same cause, how can it be truly said that the

lot owner has been injured to the extent of a farthing? The
absence of injury may have been the result of the general
growth of the city by reason of which the particular property
has grown in value with the rest of the city. It is the fact,
not the cause, which is material. Where it appears that the
property left has actually advanced in value, unless it can be
shown that but for the act of defendants in taking these ease-
ments it would have grown still more in value, the fact is plain
that it has not been damaged.

It is said the lot owner himself is entitled to the benefits
accruing to him from the general rise of property caused by a
general growth of the city in that vicinity, and that the causes
of such growth are too indefinite, and uncertain, and problem-
atical to permit the railroad to take advantage of it upon the
question of damages. Of course, the lot owner is entitled to
the benefits arising from these sources. I propose to take no
course which shall rob him of them. None other ought to or
in fact can have them. It is not a question of permitting
the lot owner to have these benefits. How is he despoiled of
them when upon an inquiry whether he has sustained damage
from the conduct of the defendants it clearly appears that he
has not? If it appear that he would have sustained damage
but for the fact that the general growth of the city in that
direction prevented it and caused an increase in value, what
materiality lies in the fact that this growth was not caused by
the railroad? As I have already remarked, the fact that there
has been no damage, is the material fact, and not the reasons
which in truth prevented the injury from occurring. If it
did not occur, then clearly the lot owner has suffered nothing.
He receives all the benefits attaching to the general growth of
the city which causes the enhancement in value of his own
lots, but he is not permitted to recover from defendants
alleged damages which, in fact, he has never sustained.

In the other view, what is to be the rule or measure of
damages which is to prevail? Is the owner to be permitted
to recover as damages the amount which it is guessed at or
surmised he would have sustained by the depreciation in value

of his land, if it had not been for the fact that it had in truth increased in value ?   What semblance of justice would there be in such a rule ?   The only possible injury which the defendants could cause him by their action lies in the injury they might do his remaining land.   An investigation of that question reveals the fact that this land has actually increased in value since the taking spoken of, and the fact is not claimed or proved that it would have increased as much but for such taking, and yet, by a course of what may be called abstract reasoning, the defendants are to be compelled to pay such a plaintiff an amount of money as representing damages he never suffered.   Any reasoning, abstract or otherwise, which permits such a result, is lame somewhere.

The defendants are not, however, compelled to base their claims of exemption on quite so broad a foundation.   They say it appears by the uncontradicted evidence that the railroad largely caused the increase in value of all the lands on Second avenue, including the plaintiffs' lots, and, as I have said, the evidence bears out such claim.   If this be the fact, how can it be said that the plaintiffs have suffered damages ?   There is no shadow of evidence that if the defendants had not taken this property and built their railroad, the property of the plaintiffs would have been as valuable or anything like as valuable as it is.   The plaintiffs have in truth been specially benefited by this railroad, although quite a number of others have also participated therein.   This special cause is the railroad, and a special benefit may result to many from such special cause.   The fact that other property in the vicinity and in the side streets has been more than proportionately increased in value by reason of the existence of the defendants' road, is not of the slightest importance upon the question of whether the plaintiffs have been injured by defendants' conduct.

The probability is very high that the property in the side streets would have been immeasurably below what it now is in value but for the operation of these elevated roads.   The same high degree of probability exists in regard to the property on Second avenue, as is gathered from the evidence of witnesses

in these cases.   It is, however, abundantly clear from the evidence actually given, that the property of plaintiffs had not suffered injury or damage by the wrongful acts of the defendants, and where the plaintiffs have in fact sustained no loss it is no hardship which prevents their recovering anything from defendants.   The plaintiffs, upon a new trial and under this view of the rule of damages may, perhaps, be able to show they have nevertheless suffered damages from the illegal action of the defendants.   It is only necessary for us in this case to decide that if the property of the plaintiffs have increased in value since the taking of these easements or a portion of them, and if such increase is largely due to the building and operation of the defendants' road, and if such increase would not have been greater but for the action of defendants, then the plaintiffs have suffered no damage.   Whether the increase is common to every other owner in the avenue and is greater in proportion with some owners of property in the side streets than with the plantiffs, are matters of no importance.   The plaintiffs are not damaged because their neighbors are benefited to an even greater extent than they are by the defendants' road.

It is not necessary to refer to the adjudications in other states upon this subject.   This is a matter upon which we must be controlled by our own views of the meaning of our own laws and of what is consistent with a proper construction of them.

It is, too, a work of supererogation to cite and comment upon separately, the various cases decided in this and other courts of our own state during the last forty years upon the subject of damages in condemnation proceedings.   We are quite familiar with them and their conclusions and we think we do not depart from the general trend thereof in laying down our own views in these cases now before us.   The *Newman* case (*supra*) stands as authority for the principle upon which we must proceed in our examination of the question of the value of these easements.

Upon the further question as to the consideration to be

given the fact of general benefits (so called), which have been caused by the railroad company, we are confident that the rule herein laid down is calculated to do full justice to both sides and is in entire harmony with the language and meaning of the statute providing for the taking of property under the Rapid Transit Acts. The rule permits a recovery by the abutting owners of the full amount of the actual damage sustained by them, while at the same time it will not permit such owners to recover by some theoretical or abstract mode of reasoning, alleged damages, which in plain truth they have never suffered.

The case of *Francis* v. *Schoellkopf* (53 N. Y. 152) has no bearing on the question whatever. The language of the head-note is a contradiction in terms. The rental value of a house cannot at the same time be injured and enhanced. The offer of proof was in regard to dwellings in the vicinity, and proof that their rental value was increased was no answer to the proof that in the plaintiff's case the effect of the nuisance was to decrease the rental value of his own property. It is, of course, plain that the modifying words of the opinion were inadvertently dropped from the head-note, a slip which will sometimes happen in spite of all the vigilance that can be exercised.

After a careful consideration of the subject, we think it appears that errors occurred upon the trial of these actions which demand a reversal of the respective judgments, and they are, therefore, reversed and a new trial granted in each of the above entitled actions, costs to abide the event.

All concur, except Gray, J., not voting.

Judgment reversed.