PECKSPORT CONNECTING RY. CO. v. WEST et al.

(Supreme Court, Special Term, Madison County.    March 19, 1897.)

1. EMINENT DOMAIN—ESTIMATING DAMAGES—USE OF HIGHWAY.
    In estimating the damage to a farm caused by the construction of a railroad over it, the owner of the farm is entitled to compensation for the risk of injury to his cattle, which had theretofore been accustomed to go for water to a place on the highway near its intersection by the railroad.

2. SAME—OBSERVATION BY COMMISSIONERS.
    The commissioners, in fixing the damages to be awarded, may accept the estimate of witnesses, or may act on their own observation on a view of the premises, aided by the testimony of the witnesses.

**8. SAME—AMOUNT OF AWARD—REVIEW.**
   An appraisal by commissioners will not be set aside by the court as excessive, unless the excess is palpable.

Condemnation proceeding by the Pecksport Connecting Railway Company against William M. West, as executor, and others.

Howard D. Newton, for plaintiff.

D. Gerry Wellington (John E. Smith, of counsel), for defendants.

FORBES, J.   This is a special proceeding, commenced on the part of the plaintiff, to acquire the right of way, for railroad purposes, through certain lands and premises owned by the defendants in their representative capacity, and also as heirs at law and devisees. Under proper steps and proceedings, commissioners were appointed to appraise the land in question.   The real dispute in this case is, what is the damage done to the farm, and what is the value of the 14.4 acres of land set forth in Schedule B?   This strip of land runs across what is known as the "Home Farm," and belongs to the Peck estate. Something like nine days' time was spent by the commissioners in a personal examination of the premises, taking evidence with reference to the value and the situation of the land in question, and in drafting and making their decision.   The whole quantity of land comprising the farms is about 354 acres.   The roadbed runs through that section of land known as "Lot or Division No. 2."   The commissioners awarded, as damages to the home farm, the sum of $4,525.   This piece of land, so taken by the plaintiff, includes a gravel bed which was taken for the purpose of building and constructing its roadbed. All other questions, in relation to other lands, having been settled by an agreement, the only question of importance in this case arises in relation to the receipt in evidence of certain estimates of value made by the different witnesses on the trial, on the part of the defendants.   So far as the main question of the value of the property is concerned, I think the correct rule of damages was adopted by the commissioners.   Seven witnesses were called on the part of the defense:   Mr. Payne fixed the value of the whole farm, before the land in question was taken, at $19,470;   the remainder of the farm, taking out the 14.4 acres of land, he fixed at the value of $13,600, the difference being $5,870.   Mr. Burchard put the value of the whole farm at $21,240;   the remainder at $16,320.   Mr. Buell put the value of the whole farm at $17,700;   the remainder at $13,600.   Mr. Lilly put the value of the whole farm at $18,585;   the remainder at $13,770. Mr. Albe put the value of the whole farm at $16,000;   the remainder at $11,000.   Mr. Chase put the value of the whole farm at $17,700; the remainder at $13,260.   Mr. Brown put the value of the whole farm at $17,700;   the remainder at $12,900.   It will be seen, therefore, that the defendants' witnesses put the general average damage at $4,849.   Taking the evidence of Payne, Albe, Lilly, and Burchard, a number equal to the number of witnesses produced on the part of the plaintiff, they make a total estimate of $20,605, which would make a general average, under their estimate, of $5,151 as damages sustained, taking the difference between the value of the land without the road and the value of the land after the construction of the

road. It will be seen that this estimate is considerably in excess of the amount fixed by the commissioners, as it is also considerably in excess of the value fixed by the four witnesses on the part of the plaintiff. On the cross-examination of the defendants' witnesses, in testing the accuracy of their estimates of what they claimed to be the actual measure of damages sustained by the defendants, the plaintiff's attorney elicited the fact that their estimates were based, in part, upon the fact that the defendants' barns are located upon the public highway, and that heretofore their stock had been in the habit of going for water in the winter to a certain place upon the highway known as the "Bridge at the Feeder," where the feeder has its junction with the Chenango Canal. It is claimed that the defendants will be deprived of this right, from the danger of the cattle being injured by straying a few rods beyond the watering place, and the liability of their being there injured by the plaintiff's passing trains at its road crossing. The witnesses estimated this damage, under the cross-examination, at from $300 to $1,350. A fair estimate of the average of this assumed damage, I think, may be put at $800; not above that figure.

The plaintiff's attorney assigns as error the reception of this evidence by the commissioners, and its retention in the case by their refusal to strike that portion of the estimate made by these witnesses out of the case at the close of his examination of the witnesses and also at the close of the case. The supposed error is based upon the theory that these damages are too remote and are contingent, and that the defendants have no right to use the public highway for the purpose of watering their cattle at the place designated; and that, therefore, the commissioners had no right to take into consideration that portion of the evidence of estimated damages in assessing the amount to be awarded to the defendants. I am not confident of the correctness of this proposition. Defendants were the owners of the land on both sides of the street prior to the taking of the land in question, and still own the same. The plaintiff's right of way across this land does not touch the highway spoken of until after the watering place is reached at the bridge, but it does cut across the continuation of the highway a few rods north of the bridge and watering place. I do not think it can be said, as matter of law, that where the owner of lands on both sides of the public highway permits his cattle to use the highway as a lane, for the purpose of reaching the legitimate object of watering them, this can be denominated as "suffering his cattle to run at large in the public highway." Nor do I think that it can be successfully claimed that if the cattle were to go to water unattended, and some of them should pass on a few rods beyond the watering place, while the others were drinking, it must be construed by the court as a violation of the statute against cattle running at large. A violation of that law could only arise from utter inattention to them, or carelessness in letting the cattle wander, or from a design, on the part of the owners, not to restrain the cattle, after they had been let into the highway for a legitimate purpose. If this theory of the defendants' right to water their cattle, at a place used from time immemorial, is correct, it seems to me that, within the

authorities, it is an element of deprivation of defendants' natural rights which may be the subject of loss to the defendants, and therefore an element of damage.  In case an accident should happen to any of the cattle thus wandering upon the public highway, it would be very doubtful indeed whether the defendants could recover any damage from the railroad company for their injury; certainly such damage cannot be recovered unless the company is grossly negligent, or should willfully run down and destroy the stock.  All of the later authorities seem to hold that the commissioners have the right to take into consideration, in estimating damages, any circumstance or condition which might reasonably be liable to produce any injury to the landowner.  For instance, the liability of fire spreading upon the premises, and doing damage to the landowner's crops or buildings, is a legitimate consideration in estimating the damages sustained in the building of the road, and no recovery can be had for injuries of that character, for the reason that it is considered as a part of the damage estimated; and no further damage can be recovered, unless, possibly, in the operation of the road, there is gross carelessness, on the part of the railroad company, in the running and operation of its trains.  The same may be said with reference to the liability of cattle to get through fences which the railroad company is bound to build and reasonably keep in repair.  Still there is a liability that by accident or design the defendants' cattle may get upon the track, and be injured, and that is also an element of danger to be taken into consideration in an estimate of the damage sustained by taking the land for railroad purposes.  In re New York, L. & W. R. Co., 29 Hun, 1; In re New York Cent. & H. R. R. Co., 15 Hun, 63.  This doctrine is approved in American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 29 N. E. 302; Bohm v. Railroad Co., 129 N. Y. 576, 29 N. E. 802.

The proceedings in this case show that the commissioners went upon the land and examined the property, and they certify to the number of days actually spent in that examination.  They have the right to accept the estimates made by the witnesses, or, upon actual observation, aided by the evidence of the witnesses, to fix the measure of damages and the compensation to be awarded, in the same manner and to the same extent as a jury would have were they sitting in a case where there was a dispute as to the market value of property with which they had become familiar on the trial, upon a view of the premises, or from a description of the property.  In re New York El. R. Co. (Sup.) 8 N. Y. Supp. 707; Code Civ. Proc. § 3370.  In the case at bar, by taking an average estimate of the highest value fixed by four witnesses on the part of the defendants, it is apparent that the commissioners agreed upon a less sum as damages.  Deduct $800 from the average amount of these four estimates, and we still have the sum of $4,351, after taking out the item complained of, which leaves a difference only of $174 between the sum awarded and an average estimate made in that manner.  So that it is not at all certain, nor is it probable, that the commissioners allowed that item of damages as estimated by the defendants' witnesses.  The evidence, however, was legitimately in the case, and it was a necessary part of

the cross-examination. It was evidence brought out by the plaintiff's counsel solely for the purpose of seeing under what circumstances, or upon what conditions, the general estimates of value were made. It was not error to refuse to strike this evidence from the case, but the commissioners had the right to, and probably did, take into consideration this evidence, since it may be fairly inferred that they did consider all of the evidence in the case. If the award of the commissioners had been for the highest value fixed as the measure of damages, in that case there might have been some legitimate conclusion drawn from the argument of its improper use. Courts will not set aside an appraisal because the compensation is too great, unless the excess is plain and palpable upon the evidence. The judgment of the commissioners is entitled to great weight, and the court is not at liberty to disregard it, even though it might have awarded a less sum. In re New York, L. & W. R. Co., 27 Hun, 116. This case arose in our own department. In re Sobel (Sup.) 8 N. Y. Supp. 707. The award is general, and unless the court can see that the commissioners have utterly disregarded the evidence, or that they were improperly influenced, in determining the amount of compensation, the award ought to stand. In re New York, W. S. & B. R. Co., 35 Hun, 260. The rule of damages adopted by the commissioners is the correct one. Id. 262; American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 29 N. E. 302; Bohm v. Railroad Co., 129 N. Y. 576, 29 N. E. 802, distinguished in Bookman v. Railroad Co., 147 N. Y. 298, 41 N. E. 705. If I am correct in the conclusions which I have reached, the award must stand, with an allowance for disbursements and counsel fees to D. Gerry Wellington, Esq., as guardian ad litem of Roger Peck Smith, an infant. His allowance is hereby fixed at the sum of $150. Also an allowance of $100 should be made to the defendant William M. West, as trustee of said infant, for his costs, disbursements, and expenses in said proceeding. In re Grade-Crossing Com'rs of City of Buffalo (Sup.) 43 N. Y. Supp. 1073. The commissioners' fees should be allowed only at the amount provided for by statute,—$6 per day. Within the case of Railroad Co. v. O'Sullivan, 8 App. Div. 320, 40 N. Y. Supp. 937, the plaintiff being in occupation of the land, and having the benefit of the land so taken, the amount of the award is directed to be paid over to the defendant William M. West, as trustee of said infant, upon West's executing a proper bond in the penal sum of $4,525, conditioned that if this order shall be reversed, and a new appraisal be made, under which a less sum shall be awarded to the owners than has been awarded in the first instance, the owners will make restitution to the plaintiff of the difference between the amount which the owners shall receive under the existing order or decree and that which may be received under the new order or decree, if the award shall be thereby reduced. Judgment is ordered accordingly.