MARSH v. KINGS COUNTY EL. RY. CO. et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1898.)

No. 86.

1. ELEVATED RAILROAD—INJUNCTION—DEPRECIATION OF ABUTTING PROPERTY.
An injunction against the operation and continuance of an elevated road, in the city of Brooklyn, should not be granted on the suit of an abutting owner who, though proving that the operation of the road obstructs the circulation of air, and is attended with noise, smoke, and loss of light, and that his abutting property has decreased in rental value, fails to further show that such decrease was the result of the existence of the railroad or its operation.

2. SAME—REMEDY.
Where the abutting owner fails to show that the decrease in the rental value of his property is the result of the construction or operation of the road, and his bill for an injunction is dismissed, his rights are properly protected where the dismissal is without prejudice to an action at law.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

The complainant, a citizen of New Jersey, brought a bill in equity in the circuit court for the Eastern district of New York, against the Kings County Elevated Railway Company, a New York corporation, located in the city of Brooklyn, which alleged that the defendant, by the use of an elevated steam railway in Fulton street, in front of the complainant's block of houses, was committing a permanent and continuing injury to his property, through the noise of the trains, the obstruction to the circulation of air, the shutting off and darkening the light, the road's interference with the free use of the street, and by the emission from its engines of smoke and noxious vapors, whereby the defendant appropriated and injured, and was continuing to injure, the easements appurtenant to this property, without compensation. The bill prayed for an injunction against the operation and continuance of the elevated structure in front of the complainant's premises. The circuit court dismissed the bill without prejudice to an action at law, from which decree the complainant appealed to this court.

Theodore E. Gates and William H. Ingersoll, for appellant.

Charles H. Russell and Wm. C. Perry, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts). The complainant purchased, on June 1, 1887, for $87,000, 30 lots on Fulton street, in Brooklyn, each of about 20 feet in front, and containing in all a frontage of 629 feet. The 9 lots described in the complaint were sold to Thomas Donahue in December, 1887. Eight of them were reconveyed on January 29, 1890, and one was reconveyed on October 31, 1891, each being subject to a mortgage to an insurance company for $8,500. Marsh sold the lots with a contract to make a loan to the purchaser, to be expended in buildings, made such a loan, and retook the property subject to the mortgages, without foreclosure, because of the inability of the purchaser to carry his investment. The buildings were finished in the latter part of 1888, and the elevated road began to run on August 20, 1888. The buildings are nine in number, each of 20 feet in front and 50 feet in depth, each of four stories, with brown-stone fronts, and each con-

taining a store upon the street and three flats above. The rental value of each store was intended to be at least $25 per month, and the rental value of the flats was, at first, $20, $18, and $16, respectively. They are not, and never were, apartment houses of the first class, or with all the incidents of modern flats of a fine class in that neighborhood. A depreciation of the rental value of this property, and of that class of property in Fulton street, began to be noticeable in 1892, and there are more frequent vacancies in the flats and stores than when they were first built. The rental value of the stores is from $20 to $25 per month. The depreciation in the rental character of the apartments has been due to three causes: (1) A better class of flats has been built on side streets in that vicinity; (2) a greater number of new flats have been built in Brooklyn; and (3) from 1892 and thereafter a general depreciation in the value of Brooklyn real estate took place. While the land is worth more than it was in 1887, the market value of the entire property has receded from its market value when the buildings were completed, owing to the same causes which have just been mentioned. At the point where the property is situated, it is conceded that "Fulton street is eighty feet wide from house line to house line, the roadway being forty-two feet wide, and sidewalks nineteen feet wide on each side; that the elevated railroad is built over the middle of the street, and is supported by a row of columns placed along the edge of the curb along the sidewalk, seventeen feet from the house line, and that said columns are sixteen inches in diameter, and that there are four of them in front of the row of buildings owned by plaintiff, they being forty and fifty feet apart; that a train passing on the structure is twenty-nine feet from the front of plaintiff's buildings; and that the tracks of the road are twenty-one feet above the ground." Some testimony was given in regard to the injury to the flats from the noise of the railroad trains and the exclusion of the light; but there was no substantial testimony that these circumstances diminished the rental value of these flats, or of other flats of a like class, although it is obvious that flats of a first class, which would ordinarily rent for $50 per month or more, would be injured by the immediate proximity of an elevated steam road. While there can be no question that the noise, steam, smoke, and perhaps odors which come from the passing trains of an elevated road in front of a dwelling house diminish the enjoyment, and to a certain extent the comfort, of the inmates of the house, it cannot be found that the proximity of this elevated road to these buildings of the complainant diminished his income. It was diminished because, as testified by one witness, "there has been an overproduction of stores and flats on the line of the elevated roads, to such an extent that they have reduced the rental values considerably." The same thing is true in regard to the market value of the property.

The theory upon which the interference of a court of equity is asked in this class of cases is that it alone can furnish the appropriate remedy to prevent a continuing injury to the easements of air,

light, and access, which are appurtenant to complainant's land; in other words, can prevent a continuing injury to the value of his land.    Bohm v. Railway Co., 129 N. Y. 576, 29 N. E. 802.    In this case the complainant shows that an elevated road abuts upon his land, and that its use is attended with noise, smoke, and interference with light, and he seeks to show the extent of this injury by the loss of income and the depreciation in the value of his property. It is true that his property has depreciated in value, but he has failed to show that the loss and depreciation were due to the existence of the defendant's structure, or to the operation of the road, or that the structure or the trains have prevented an increase of value which would otherwise have taken place.    The link which connects the loss of value with the use of the road is lacking.    Donahue built these buildings contemporaneously with the construction of the road, in the expectation of pecuniary benefit from it. Other citizens of Brooklyn prepared to enjoy the benefit to real estate situated at a distance from the centers of trade, which it was anticipated would follow the erection of cheap and rapid modes of transit, and also built stores and flats along the lines of the roads, and built flats on the adjoining streets.    There was an overproduction, and there was, from some cause, a general depreciation of real estate in the city, the effects of which were felt in the cheaper class of tenements and of stores.    The elevated road's part in the result was in the fact that it had helped to stimulate overproduction.

The subject of the duty of a court of equity to grant relief by injunction against the operation of an elevated steam road which had injured the enjoyment of easements of air, light, and access appurtenant to a complainant's land, but which had resulted in no injury to the market value or rental value of the premises, was considered with great care by the court of appeals of New York, which spoke through Judge Gray, in the test case of O'Reilly v. Railroad Co., 148 N. Y. 347, 42 N. E. 1063.    The decision refusing to grant a remedy for an injury of this technical class was based, among other considerations, upon the substantial and firm ground stated in Gray v. Railway Co., 128 N. Y. 499, 28 N. E. 498, as follows:

"An equity court is not bound to issue an injunction where it will produce a great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right."

In the O'Reilly Case, by reason of the presence and operation of the elevated road, the value of the complainant's property had increased.    We do not think that it can be determined accurately from this record whether, by the construction and operation of the defendant's road, the real value and the rentable value of the plaintiff's premises were worth more than they would have been had it not been built, because the buildings were built at about the same time with the construction of the road, and probably in consequence of the certainty that it was to be built; and what would have been the financial condition of that class of real estate if the

road had not been put in operation is not evident. It is, however, manifest that the road has not financially injured the complainant, and has not prevented an increase of value, and thus far the circumstances correspond to those which were the subject of the O'Reilly decision, the syllabus of which is as follows:

"An injunction against the operation of an elevated railroad, constructed in a public street in the city of New York, by authority of law, should not be granted at the suit of an abutting owner, on proof of the wrongful appropriation of the appurtenant easements of light, air, and access, when the plaintiff fails to show any substantial monetary damage to his property, or loss suffered, by reason of the defendant's acts, but it appears that, by reason of the presence and operation of the elevated railroad in the street, the value of the plaintiff's property has increased, and that it has shared equally with all the property in the vicinity in the general increase of values." "The dismissal, on failure to prove substantial monetary damage, of a complaint seeking to enjoin the operation of an elevated street railroad, on the ground of the wrongful appropriation of easements appurtenant to abutting private property, is not open to the objection that the continued tortious acts will eventually give the defendant company title to the property rights wrongfully appropriated, when the judgment states that it is without prejudice to the right of the plaintiff to bring such action as he may thereafter be advised, based upon facts not inconsistent with those herein adjudged."

We concur both in the reasoning of Judge Gray and in the result to which he came. The decree of the circuit court is affirmed, with costs.