JACOB BOOKMAN, Respondent, *v.* THE NEW YORK ELEVATED RAILROAD COMPANY and THE MANHATTAN RAILWAY COMPANY, Appellants.

1. ELEVATED RAILROADS — UNIMPROVED LOCALITIES — INCREASE OF VALUES. Where an elevated street railroad enters a vacant and uninhabited locality, which normal city growth has not effectively reached, which improvement has not seriously touched, which remains to be developed, and which has no element of growing value except such as lies in hope and expectation, and thereupon and thereby population and growth are diverted to the new line of rapid transit, creating a steady increase of values both directly on the line and in the side streets near by, the only inference is that the increased values are the product of the newly-opened line, and the courts are justified, in such a situation, in denying any force to the speculations of experts or to a greater increase in the side streets, and in refusing an award of damages to an abutting owner.

2. IMPROVED LOCALITIES — INCREASE OF VALUES. Where, however, the elevated road enters an area already substantially built up and improved, the average rate of the observed increase in such locality can be approximately ascertained, and if the rate continued after the construction of the elevated road, in the side streets, but a less rate of increase is found on the avenue occupied by the cars, and facts are shown explaining such loss by evil effects of the new line, it is possible to infer that the avenue property has not shared as it should in the normal and independent increase of value to the extent to which it was entitled.

3. DAMAGES — RULE DEFINED. If, in an action by an abutting owner against an elevated railroad, the proof shows that before the coming of the elevated road in the particular locality that locality was substantially or mainly vacant and not built up, and that after the road came the building and improvement swiftly followed, accompanied by steady and serious increases of value, no damages should be awarded, and the complaint should be dismissed, even though the side streets had appreciated more rapidly than the avenue occupied by the elevated road. But if the proof shows that the elevated road has occupied a locality already substantially

built up, in which normal city growth is operating and seriously increasing values, but as a consequence of the road the natural advance has halted or palpably lessened, while in the adjacent side streets it continues, there is possible an inference of fact that the abutter has been injured.

4. DAMAGE — FAILURE OF PROOF. In an action brought by the owner of property abutting upon Third avenue, in New York city, to restrain the operation of an elevated railroad in front of his premises, and for damages caused thereby, the plaintiff recovered a judgment. The trial court found that the plaintiff's property was injured by the railroad over and above all benefits, but there were also findings to the effect that the locality was previously substantially vacant and unimproved, or at the most only partially built up, while soon after the construction of the elevated road it was compactly built up; that both the rental and fee values of the property had largely increased since the building of the road; that the presence of the road, with its stations near by, had brought multitudes to the locality, increased business and benefited the fee and rental values, in which benefit property in the adjacent side streets had also shared; that the increased accessibility had induced settlement and building; that the same improvement would not have occurred in the absence of rapid transit, and that the elevated road had been one of the great and efficient factors in building up the locality. *Held* (GRAY, O'BRIEN and BARTLETT, JJ., dissenting), that the finding that plaintiff's property was injured by the railroad over and above all benefits conferred was wholly unsupported by proof and contradicted by the specific findings; that the fact that there may have been a greater increase of value in the side streets than in the avenue, due in part, at least, to the influence of the defendant's road, did not prove or even indicate damage in a situation like the present, and that the judgment should be reversed.

*Bohm* v. *Met. Elevated Ry. Co.* (129 N. Y. 576), followed; *Becker* v. *Same* (131 N. Y. 509), and *Storck* v. *Same* (131 N. Y. 514), discussed.

*Bookman* v. *N. Y. El. R. R. Co.* (9 Misc. Rep. 727), reversed.

(Argued June 10, 1895; decided October 29, 1895.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 10, 1894, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at an Equity Term.

This action was brought to restrain the operation and maintenance by defendants of their elevated railroad in front of plaintiff's premises, in Third avenue, New York city, and for the recovery of damages caused thereby.

The plaintiff's properties in suit were, at the time of the trial, Nos. 261, 1028, 1240, 1242, 1244, 1246, 1248 and 1255 Third avenue.

The judgment was in the form usual in this class of actions. It decreed an injunction, and as incidental relief awarded the plaintiff $8,200 as past damages to rental value, and provided for the avoidance of the injunction on payment of $9,800, which was found to be the damage to the fee value, over and above all benefits, by reason of the construction, maintenance and operation of the elevated road in front of the plaintiff's premises.

The questions presented, and the facts relating thereto,. are stated in the opinion.

*Arthur O. Townsend* for appellants. The question of law here involved is that the findings of the trial court are in irreconcilable conflict with each other, and those most favorable to appellants being taken as true, support the exceptions to the judgment and demand its reversal. (*Bonnell* v. *Griswold*, 89 N. Y. 122; *Green* v. *Roworth*, 113 N. Y. 462; *Schwinger* v. *Raymond*, 83 N. Y. 192; *Conselyea* v. *Blanchard*, 103 N. Y. 222; *Redfield* v. *Redfield*, 110 N. Y. 671; *Kelly* v. *Leggett*, 122 N. Y. 633.) The court below erred in making findings of fact essential to its decision without any foundation whatever in the evidence. The most cursory examination of the judgment roll is enough to show that this case is not one where any decline in rents or values has occurred, at least as to seven of the eight properties. (*Sutro* v. *M. R. Co.*, 137 N. Y. 592; *Hadden* v. *M. El. R. Co.*, 75 Hun, 63; *Krumwiede* v. *M. R. Co.*, 9 Misc. Rep. 552.) The damages were, presumably, awarded on the theory that without the railway the actual increases would have been still greater. This was erroneous. (Code Civ. Pro. § 1023; *Steubing* v. *N. Y. E. R. R. Co.*, 138 N. Y. 658; 137 N. Y. 302.) Benefits are a result. Damages are a result. Neither is a factor, and they cannot co-exist and be weighed against each other in any case. (*Bohm* v. *M. E. R. Co.*, 129 N. Y. 576.)

*E. W. Tyler* for respondent. There is no "irreconcilable conflict" between the findings of the court as is claimed, by the appellants, and the judgment for the plaintiff is sustained by the facts found and proved. (*Redfield* v. *Redfield*, 110 N. Y. 671; *Green* v. *Roworth*, 113 N. Y. 467; *Storck* v. *M. E. R. Co.*, 131 N. Y. 516; *Williams* v. *B. E. R. R. Co.*, 126 N. Y. 100.) The assumption that if this property is worth more than it was before the elevated railroad was constructed, it conclusively follows that the railroad is not damaging the property and plaintiffs are not, therefore, entitled to a judgment, is erroneous. (*Hunter* v. *M. R. Co.*, 141 N. Y. 281; *Bischoff* v. *N. Y. E. R. R. Co.*, 138 N. Y. 257.) The real question before the court in this case is not what is the value of the pure ground of the property, for, with the exception of the property at the corner of Twenty-first street, all these are finely improved pieces of real estate, but the question to determine is whether that piece of real estate would sell for more with the elevated railroad removed from it, not what the value of its lot as a vacant lot would be. (*Becker* v. *M. E. R. Co.*, 131 N. Y. 512; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 449.)

FINCH, J. It is impossible to decide this appeal correctly without a full and definite appreciation of the difference between the case of *Bohm* (129 N. Y. 576) and that of *Becker* (131 N. Y. 509). Both belonged to the class of actions in which the abutting property was shown to have seriously increased in value since the construction of the elevated road, so that, presumably and apparently, benefit instead of damage had resulted; and in each it was, therefore, necessary to show as ground of recovery two things; first, that when the road was built the locality was increasing in value from the tendency toward it of incoming population and normal city growth, and, second, that in the continuance of that progressive increase of value the plaintiff's property would have shared if the railroad had not been built, but was prevented from so sharing to its due extent by the presence of the road

operating more or less as a barrier to a normal advance.  In
the earlier case we held that there was no evidence of either
essential fact, and reversed an award of damages; in the later
case we decided that there was some evidence of the necessary
facts and so a reversal was not possible, however just such a
reversal might have been.  Since the evidence in the two
cases was very much alike the real difference in its effect was
necessarily due to the wide difference of situation and sur-
roundings existing when the new structure was built, and
some consideration of that difference and of its results may
prudently precede a reference to the facts now before us.

Where an elevated street railroad enters a vacant and unin-
habited locality, which normal growth has not effectively
reached, which improvement has not seriously touched, which
remains to be developed, and which has no element of grow-
ing value except such as lies in hope and expectation, and
thereupon and thereby population and growth, tending else-
where, are diverted to the new line of rapid transit, and build
up the vacant locality, creating a demand for lots and a steady
and persistent increase of values both directly on the line and
in the side streets near by, the only reasonable and sensible
inference is that the increased values are the sole and sub-
stantial product of the newly opened line which has brought
prosperity to a neglected locality.  So far as normal growth
or incoming population has had anything to do with the
increase of value they are themselves as operating causes due
to the new mode of access, and in no respect separate from or
independent of it.  In and of themselves they would have
done the locality no good; would have spent their force else-
where; would have built up homes even in other states
whence steam would give rapid and easy passage, and left the
locality to its normal solitude.  Of course, in such a case, it is
little short of an absurdity to say that the coming of the road
prevented the abutter from having his share of the normal city
growth, since it is the coming of the road that enables him to
participate in that growth at all; that brings it to his vacant
and unmarketable lots; that sets it in operation as a cause of

increasing values. It is the obvious truth of such a situation that the removal of the road to some other locality would at once diminish the value of the abutting property by taking away the adequate cause of its advancement, and diverting the growth which had begun to the new line adopted. It is further true of such a case that no ingenuity and no proof can separate what is called the normal city growth as a cause of increasing value from the chief and principal cause, which is the rapid transit system. The two are not only interwoven and inextricably mingled, but the former has no existence in the supposed locality separate from and independent of the latter. It follows that in the supposed situation neither proposition essential to a recovery is or can be proved, for it is not true that the local values were seriously increasing when the road was built, nor that the increase when it came was due to any cause independent of the stimulating effect of the road. Such was the *Bohm* case, and we were justified in refusing an award of damages, in disregarding the guess of experts, and in denying any force to a greater increase in the side streets.

But the situation changes materially when the elevated road enters an area already substantially built up and improved. In such a locality normal growth has come, and built the blocks up solidly, or nearly so, and caused an increment of value due to itself alone, and with which the rapid transit line had nothing whatever to do. Such normal growth it is evident had its own independent existence and operation because it had already worked and was continuing to work its result of an increase of values when the railroad did not exist. The average rate of that observed increase in such locality can be approximately ascertained, and if the rate continued after the construction of the elevated road in the side streets, but a less rate of increase is found on the avenue occupied by the cars, and facts are shown explaining such loss by evil effects of the new line, it is possible to infer that the avenue property has not shared as it should in the normal and independent increase of value to the extent to which it was entitled. That I understand to be the substantial basis of the *Becker* case. The dis-

tinction I have sketched was plainly drawn in the opinion.
It was there said, " that although certain of the side streets
were not all built upon when the road was erected and put in
operation, yet it does appear that the locality where this prop-
erty is situated was fairly built up before the road was
operated, although to some extent the adjacent side streets
have been more compactly built upon since that time. There
has been no such change from absolute vacancy within large
and extensive portions of the city limits as has occurred in
the vicinity of Harlem, where it has appeared in evidence
the side streets and the avenues have been practically brought
into existence and peopled since the building and operation of
the elevated roads. It was in regard to such a locality
that we said in the *Bohm* case there was no proof what-
ever of damages." I have thus repeated the language
of Judge PECKHAM's opinion, pointing out the difference
between the *Becker* case and that of *Bohm*, to show that I
have strictly followed it and merely further explained and
discussed it, and that no new doctrine is in any manner
asserted. The distinction is not narrow or argumentative, but
radical and real. It will enable the courts below to put an
end to any such injustice as awarding damages where benefits
have instead accrued, and upon speculative theories destitute
of actual foundation. If the proof shows that before the
coming of the elevated road in the particular locality that
locality was substantially or mainly vacant and not built up,
and that after the road came the building and improvement
swiftly followed, accompanied by steady and serious increases
of value, it will be the duty of judge or jury to award no
damages and dismiss the complaint, even though experts may
guess, or side streets appreciate more rapidly. But if the
proof shows that the elevated road has occupied a locality
already substantially built up, in which normal city growth is
operating and seriously increasing values, but as a consequence
of the road the natural advance has halted or palpably
lessened, while in the adjacent side streets it continues, there
is possible an inference of fact that the abutter has been

injured.  But even in those cases a trial court may well hesitate, and require decided and clear proof, and refuse to be misled by deceptive comparisons.  It is very rare that in any case or any locality, where the value of the property has largely increased from the date of the coming of the road, and is more or less coincident with it, that any damages ought to be awarded by the process of entangling one's common sense in a web of theory.  There may be here and there some exceptional case.  We thought the *Storck* * case was one, and affirmed it as such, though with much of doubt and hesitation.  The property involved was in the same locality with that owned by Bohm, and a similar decision denying damages would have been inevitable but for the proof of some exceptional facts and circumstances.  There was evidence of a diminution of rentals because of the erection of the road, and that the influx of population which usually and naturally tends to increase values was of such a character as to prejudice rather than benefit the values in question.  We thought there was something to raise a question of fact, and, without approving the judgment, felt bound to affirm it.  That case was not intended to overrule the *Bohm* case, and must be deemed exceptional and to stand on its own facts.

The present case comes clearly within the scope of the *Bohm* decision.  It is specifically and explicitly found, and upon the evidence no other finding was possible, as to all the property except No. 261 Third avenue, that the locality was substantially vacant and unimproved, or at the most only partially built up, while soon after the construction of the elevated road it was compactly built up.  It is found that the rental value of No. 261 was increased after such construction, and that the fee value rose from $22,500, in 1869, to $40,000, in 1890, and that the premises were worth more in 1890 than at any time prior to the coming of the new line.  It is further found that the presence of the railroad, with its stations near by, has brought multitudes to the locality, increased business and benefited the fee and rental values, a benefit in which property on the adjacent side streets has also shared.

---

* 131 N. Y. 514.

As to No. 1028 it is found that its rental increased from $2,400, in 1875, to $5,500, in 1892, and the fee value from $36,000, in 1881, to $75,000, at the date of the trial. And the same facts as to the beneficial effect of the railroad upon values are again found.

As to Nos. 1240 to 1248 and 1255 a similar state of facts appeared. The rents of the former in 1877 were $9,136, and in 1892 had grown to $11,855, and in that year the rents were greater than ever before the construction of the road. The great change was in the rental of the stores. While the rental of the flats overhead diminished, evidently because of the new supply of better apartments, the business rentals increased from $3,440, in 1876, to $8,200, in 1893, showing a gain of 138 per cent. It must have been difficult to persuade the owner who took that gain that nevertheless he had been damaged. The value of the lots as distinguished from the buildings was, in 1872, about $66,000, and at the time of the trial about $120,000. The value of No. 1255 was $15,000, in 1873, and at the time of the trial about $20,000. It is further found that, in 1873, the streets and avenues in the vicinity were practically vacant and have all been built up since 1877; that the increased accessibility has induced the settlement and building; that the same improvement would not have occurred in the absence of rapid transit, and that the defendant's road has been one of the great and efficient factors in building up the locality.

We have thus before us a state of facts corresponding to that disclosed in the case of *Bohm.* The result must be the same. That there may have been a greater increase in the side streets, due in part, at least, to the influence of the defendant's road, does not prove or even indicate damage in a situation like the present. For in every case where a vacant area is built up and gains an increase of value coincident with the coming of the railroad and obviously stimulated by it, the appreciation of property in the adjacent side streets is largely due to the same cause, and the case is one in which benefits only have accrued, and they do not become injury on the

avenue because they help more largely the residence lots near by. In such a case there is no normal city growth operating independently, or capable, by itself, of severance or measurement. It is, relatively to the unimproved locality, a secondary cause set in operation by a primary one, and the primary one originating the general benefits flowing from the secondary one, does not become hurtful to one lot because it helps to a greater degree some other. The railroad in the vacant locality cannot be said to hinder what it in fact produces.

It follows that the judgment rendered is erroneous. The finding that plaintiff's property was injured by the railroad over and above all benefits conferred is wholly unsupported by proof and contradicted by the specific findings.

The judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, J. (dissenting). I feel constrained to dissent from the opinion in this case, not because I am unwilling to agree to the particular rule therein adverted to ; but because I think there was some evidence upon which the decision of the trial court could rest. It may be considered unsatisfactory and it may be vague ; but that consideration is no ground for reversing the judgment, as we held in the *Becker* case, (131 N. Y. 509). I do not object to the rule which prohibits an award of damages where there has been no proof of damage, or where it must rest upon theoretical inferences. That rule was laid down in the *Bohm* case, (129 N. Y. 576), and must be regarded as established by that decision ; but I do object to the application of the rule to the facts as developed in the present case, which disclose a different condition of things from what was found to exist in the *Bohm* case. It cannot be said with respect to the entry of the elevated railroad into the neighborhood of the properties described in the complaint, that that part of the city was brought into existence and peopled through the agency of the defendants, unaided by a normal city growth which was operating to increase city values. It

seems to me that consistency with our prior decisions, which have affirmed recoveries based upon comparisons of property values in the neighborhood in connection with other facts relating to the railroad, as the only practicable proof within the reach of the complainant, requires us to affirm the recovery here. The *Becker* case, (*supra*), is an authority which we cannot well overlook in the consideration of the disposition of the present case.

ANDREWS, Ch. J., PECKHAM and HAIGHT, JJ., concur with FINCH, J., for reversal; O'BRIEN and BARTLETT, JJ., concur with GRAY, J., for affirmance.

·Judgment reversed.