I am of the opinion that the demurrer must be sustained. The condition precedent set up in the second defense requires plaintiff to bring an action at law upon a contract against certain persons who never were parties to the contract, and never, by devolution, assumption, novation, or otherwise, assumed any obligation thereon; that is, it requires the plaintiff to bring an action against persons against whom he has no cause of action. This provision is against public policy, and therefore void. This case is to be distinguished from that class of cases in which the obtaining of the certificate of an architect or engineer as to the amount and value of the work done is made a condition precedent to the commencement of an action. Such conditions precedent were before the courts in Byron v. Low, 109 N. Y. 291, 16 N. E. 45, and Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, and were held valid.

The demurrer is sustained, with costs.

---

OTTEN v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. March 13, 1896.)

1. EMINENT DOMAIN—COMPENSATION.
Where an elevated railroad company appropriates to its own use the easement of an abutting owner in a street, without such owner's consent or any legal right, instead of acquiring title to it in a lawful manner, in determining whether such owner is damaged and the amount of his damages, the condition of the property at the time of the determination is to be considered, and not its condition at the time of the appropriation.

2. SAME—ELEVATED RAILROAD—DAMAGE TO ABUTTING OWNER—SUFFICIENCY OF EVIDENCE.
In an action against an elevated railroad company to restrain a continuous trespass on an abutting owner's easement in a street occupied by defendant, it appeared that the structure was an impairment of plaintiff's right to the use of the street; that the location and use by defendant of such structure seriously affected the use of plaintiff's property; that other means of communication from his property to the other parts of the city were afforded to plaintiff, which were at least as convenient and rapid as that afforded by the elevated road. Held, that the maintenance and operation of defendant's road were a substantial injury to plaintiff. O'Brien, J., dissenting.

Appeal from superior court of New York City, special term.

Action by Henry Otten against the Manhattan Railway Company to restrain defendant from a continuous trespass on plaintiff's easement in a certain avenue in the city of New York. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY. O'BRIEN, and INGRAHAM, JJ.

W. W. Badger, for appellant.
Brainard Tolles, for respondent.

INGRAHAM, J. This action, brought to restrain the defendant from a continuous trespass upon the plaintiff's easement in Columbus avenue, near 98th street, in the city of New York, was decided in favor of the defendant, upon the ground that the evidence did

not show that the injury sustained by the plaintiff in consequence of the trespass exceeded the benefit to the plaintiff's property from the maintenance and operation of the defendant's railroad.

The decision of the court upon which the judgment was entered was one stating concisely the grounds upon which the issues had been decided, and not one that stated separately the facts found. We are therefore required to review all questions of law or fact presented upon the record. See section 1022 of the Code. The plaintiff's property consists of two buildings, 25 by 60 each, the lots 74 feet deep, situated on the easterly side of Columbus avenue, between 98th and 99th streets. The buildings are used as stores upon the ground floors, and as apartments upon the floors above. There are five stories that are occupied and rented by plaintiff for living apartments. The structure of the elevated railroad in front of the premises is 47 feet and 7 inches from the surface of the street to the rail. It is just level with the sill of the fifth-story window of the plaintiff's premises, and consists of three tracks, two of which are used for the ordinary way-passing trains, while the center track is used for express trains. The evidence is that such express trains pass this point at a speed of about 30 miles an hour. The evidence as to the obstruction and interference with the plaintiff's easement establishes, beyond a doubt, that the interference here is most serious, and, in consequence of the height of the structure, and the use that is made of it, is a substantial injury to the plaintiff's property. The whole front of the building is covered by the structure and the passing trains, and the use of this third track for express trains, at the speed with which they pass the premises, in addition to the local travel, must be a serious interference with the use of the premises for living purposes. The court below, however, recognizing this condition, dismissed the complaint, because it appeared that the benefit which the plaintiff derived from the maintenance and operation of this road equaled or exceeded the injury thus caused.

The decision of this case depends upon the determination of the question as to what, if any, benefit this plaintiff derives from the maintenance and operation of this road. We recognize the principle, that is well established, and which is the foundation of the administration of equitable relief by way of injunction, that, to justify such an injunction, the injury to the complainant must be proved to be substantial; that a court of equity will not interfere, by this discretionary writ or mandate, to remedy a wrong which causes no substantial injury; and that, although a legal title may be interfered with, where such interference does not cause continuing substantial damage, a court of equity will leave the parties to their action at law. And this principle has been applied, by a late decision of the court of appeals, to actions of this character, by a very convincing opinion, by Judge Gray, in the case of O'Reilly v. Railroad Co., 148 N. Y. 350, 42 N. E. 1063. And if it appeared that, although this trespass by the defendant upon the plaintiff's property—this wrongful and unauthorized use by the defendant of the plaintiff's right and interest in this street—was really a benefit

to the plaintiff, instead of an injury, and that the present removal of this elevated railroad from this street would be a greater injury to the plaintiff's property than the maintenance and operation of the road, it is clear that the court was right in refusing to give to the plaintiff any relief in equity, leaving the plaintiff to his action at law for damages.

In considering this question, however, it should be remembered that we have to determine just what effect the maintenance and operation of this elevated railroad have upon the plaintiff's property at the present time. It is not the condition of this property 15 or 20 years ago, when the road was first built, that has to be considered. If the defendant had then taken and paid for the property that it required in the street, instead of wrongfully appropriating it to its own use, without consent or legal right, it would have been the value of the interest of the plaintiff in the street at that time that defendant would have had to pay for. This defendant, however, saw fit to seize the plaintiff's property, and use it without right or authority, instead of purchasing it, or acquiring title to it in a lawful manner; and now, when it is called to account for its act, it is the condition of affairs at this time that is to be determined. It is the value of the plaintiff's property now that is to be ascertained, and the question is whether or not the maintenance or operation of this road is an injury or benefit to the plaintiff's property at the present time. If this road were now removed, with existing conditions, with existing methods of transfer from the plaintiff's property to the other parts of the city, would plaintiff's property be worth now more or less than it is with the road maintained and operated? The fact that, 15 or 20 years ago, access to the property was difficult and tedious, and that the building of the railroad made it more accessible, and added to its then value, and that its then holder was enabled to sell it for a greater price, would not be material in this investigation; for, as before stated, we now have to ascertain what the easement in this street appurtenant to plaintiff's property is now worth, and its value depends upon whether its appropriation by defendant is at present a benefit or injury to the property.

Considering the question in this aspect, I think it cannot be disputed but that the maintenance and operation of this structure is a substantial injury to the plaintiff. This property is about midway between the two stations of the elevated railroad, one station being at 93d street and the other at 104th street; so that, in order to use the elevated railroad, a person has to walk from 98th street to 93d or to 104th street, being upward of a quarter of a mile. The evidence shows that the benefit to the property midway between stations is the minimum benefit that it can receive from the railroad. It also appeared; from the evidence introduced by the defendant, that this property now has an available means of transportation to the other parts of the city, the Eighth avenue horse cars, three lines of horse cars upon Amsterdam or Tenth avenue, one line of horse cars on the Boulevard, and a cable road on Columbus avenue, which is a continuance of the present Broadway road.

It also appeared that, taking the surface cars passing in front of this property, a person could go from this point to the Battery in about the same time as, or a shorter time than, by the elevated railroad, and that without having to walk or take another conveyance for the five blocks to the elevated railroad station.

We have, thus, the undisputed facts that this structure is an impairment of the plaintiff's right to the use of the street, and that the location and use made by the defendant of this structure in the streets seriously affect the use of the plaintiff's property. It also appears, without dispute, that other means of communication from this property to the other parts of the city are afforded to the plaintiff, which are at least as convenient and rapid as those offered by the defendant. That being the case, is it not apparent, without further evidence, that, at the present time, and as at present operated and maintained, this railroad gives to the plaintiff no substantial benefit, while its operation and maintenance are a substantial injury? This defendant's continued use of the street is a trespass, and is wrongful. Unless this defendant condemns and pays for this plaintiff's right in the street that it now uses, the plaintiff has a legal right to have the structure removed and the trespass cease. If such removal of the structure maintained and used by the defendant, and the discontinuance of its operation, would to-day cease to cause injury to the plaintiff's property, but would improve the property so as to give to the plaintiff greater rents for the parts rented, and his means of access to his property would not be affected, then it is clear that it is the duty of the court to require the defendant to remove the unauthorized and illegal structure, unless the value of the easement or property that is used should be paid to the plaintiff.

The learned judge, in his opinion, states that the property on Columbus avenue in front of this road has increased in value at a very much smaller ratio than the property in the adjoining streets; that the benefit that has accrued to property in this locality by reason of the growth of the city has fallen largely upon property in the adjacent streets, and in a comparatively small degree upon property upon the avenue through which passes this defendant's road. It is useless to analyze the evidence. It is sufficient to say that, from an examination of it, we are satisfied that this conclusion of the trial judge was correct, and that his conclusion that the removal of the defendant's road would be a more serious injury to the premises than its continued operation and maintenance was erroneous.

It follows, therefore, that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT and RUMSEY, JJ., concur.

O'BRIEN, J. (dissenting). This is the usual action for an injunction and damages. The premises consist of two lots of land on the easterly side of Columbus avenue near 98th street, known by the street numbers, "783 and 785 Columbus Avenue." Each lot has a frontage of 25 feet and a depth of 74 feet. Upon the premises are two flat houses, five stories high, with stores on the

ground floor, and apartments for two families on each of the floors above. The plaintiff purchased these houses in January, 1888, for $21,500 each. The elevated railroad in Columbus avenue was built in 1878.

The question presented is, does the evidence show that these premises suffered any consequential damages, fee or rental, by reason of the construction and operation of the road? It is conceded that, prior to the construction of the road, the locality was vacant and unimproved, and lots were worth from $2,000 apiece in 1876 to $3,500 in 1879, and, according to the defendant's expert, are now worth from $17,500 to $18,000. This increase in value was contemporaneous with the construction of the road, and was followed by extensive building operations, which took place earlier and more rapidly on Columbus avenue than on any of the other parallel avenues. The extent of the population which moved into that territory is to some degree shown by the fact that the increase in traffic was from $27,380 for three months in 1879 to over $3,000,000 for the year 1893. It also appears that, before the building of the road, lots fronting on Central Park were more valuable than those on Columbus avenue between the same cross streets, while now the reverse is true; and, though increased facilities in the way of cable and other surface roads have made this property easier of access, it is beyond dispute, upon the evidence, that, before their advent, the elevated road had given a great stimulus to property in this section of the city, and greatly enhanced the value of lots. To such a condition the language of the court in the Bookman Case, 147 N. Y. 298, 41 N. E. 705, is apposite:

"Where an elevated street railroad enters a vacant and uninhabited locality, which normal growth has not effectively reached, which improvement has not seriously touched, which remains to be developed, and which has no element of growing value except such as lies in hope and expectation, and thereupon and thereby population and growth, tending elsewhere, are diverted to the new lines of rapid transit, and build up the vacant locality, creating a demand for lots, and a steady and persistent increase of values, both directly on the line and in the side streets near by, the only reasonable and sensible inference is that the increased values are the sole and substantial product of the newly-opened line, which has brought prosperity to a neglected locality. So far as normal growth or incoming population has anything to do with the increase of value, they are themselves, as operating causes, due to the new mode of access, and in no respect separate from or independent of it."

And in that case, although there was evidence to show that, in the streets just off the line of the road, the increase was greater, the court refused to give any weight to such testimony, and followed the Bohm Case, 129 N. Y. 576, 29 N. E. 802, in which, upon similar evidence appearing, an award of damages was denied.

The evidence showing the growth and development and increase of values in this locality, and the extent thereof, is affirmed by every witness, except one expert on behalf of the plaintiff, who, while admitting such increase in values contemporaneous with and subsequent to the building of the road, does not place it as high as the other witnesses. As shown, however, this man testified that he had been a broker but about five months, and that his busi-

ness prior to that time had been that of a builder, and his cross-examination shows very little familiarity with the purchase and sales of property, and cannot be regarded as outweighing that of the three experts presented on behalf of the defendant, who had extensive dealings in property on the line of the road in that section, and who were familiar with values, having themselves been engaged in buying and selling such property.   There is, upon the question of rental damage, plaintiff's own testimony that, shortly after buying the property, he slightly reduced the rent of tenants above the stores, the store rent remaining the same since the purchase.   That this fact of a slight reduction in rents just about the time the plaintiff purchased, in order to make them conform to the rental value, is not, standing by itself and unexplained, proof of rental damage, has been held in two cases:   McCready v. Railway Co., 76 Hun, 531, 28 N. Y. Supp. 94, and Storm v. Railroad Co., 82 Hun, 11, 31 N. Y. Supp. 13.   It thus appears, from the testimony, that the property has steadily increased in value, both fee and rental, since the construction of the elevated road, and that such increase has been due to the existence of the road.   The conclusion, therefore, that the road was a benefit, and not an injury, to this property, is not impaired by the fact appearing that, by reason of the construction of other means of transit, in the way of surface roads, east and west, an additional impetus was given to the value of properties, which derived benefits from the means of access thus furnished, and which therefore, by reason of the greater advantages, show a slightly greater increase in values than these premises along the elevated road.

It is true that the question is to be viewed, not as to the benefits conferred upon property in the past, but, as correctly stated in the prevailing opinion, as to "whether or not the maintenance or operation of this road is an injury or benefit to the plaintiff's property at the present time."   And this, I think, is to be determined by the answer to the question propounded:

"If this road were now removed, with existing conditions, with existing methods of transfer from the plaintiff's property to the other parts of the city, would plaintiff's property be worth now more or less than it is with the road maintained and operated?"

While the inference may be drawn, from all the testimony of values, that such value would be less, we are not confined to that, in view of the testimony furnished by one of plaintiff's own witnesses, who gave it as his opinion that rents in this district would be reduced one-third if the advantages of the elevated road were withdrawn.   And in the recent case of O'Reilly v. Railroad Co., 148 N. Y. 350, 42 N. E. 1063, the court, in commenting, with approval, upon the cases of Hunter v. Railway Co., 141 N. Y. 281, 36 N. E. 400, and Doyle v. Railway Co., 136 N. Y. 505, 32 N. E. 1008, then referred to the Bookman Case, supra, saying:

"It was held that the decree recovered by the plaintiff was erroneous, in view of the fact that the finding that the plaintiff's property was injured by the railroad over and above all benefits conferred was wholly unsupported by the proof. The theory adopted in that case by the court in its decision

was, practically, that if benefits only are shown to have been caused, as the result of the construction and operation of the elevated railway, the complainants are without right to equitable relief, as well as not entitled to any award of damages."

So here I fail to find any evidence of resultant damage, the record disclosing that such as may have been caused by the building of the road in front of these premises was more than offset by the advantages which they derived in the past, and are now deriving, as the result of the construction and operation of the road. The record, therefore, having failed to show that there was any consequential damage inflicted, either rental or fee, the learned trial judge was justified in dismissing the complaint, and the judgment appealed from should be affirmed.