**FLETCHER v. DELAWARE, L. & W. R. CO.**

**No. 458.**

Circuit Court of Appeals, Second Circuit.
July 29, 1935.

Mackenzie, Smith & Michell, of Syracuse, N. Y. (Charles E. Spencer and M. J. Allen, both of Syracuse, N. Y., of counsel), for appellant.

Southworth & Malone, of Utica, N. Y. (M. Francis Malone, of Utica, N. Y., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff brought suit (1) to recover past damages from the defendant railroad company because it had maintained tracks across plaintiff's land 'and· had unlawfully operated locomotives and cars thereon; and (2) to restrain the maintenance and operation of the railroad upon the land in the future. The answer admitted the ownership by plaintiff of the lands described in the complaint, but alleged that they were subject to an easement on the part of the defendant to maintain and operate its railroad across the same, and asked that it be adjudged that the defendant had such an easement, and therefore was not liable to pay damages. The trial court held that the plaintiff owned the strip occupied by the defendant free from any easement on the part of the latter and that it had unlawfully occupied the same and operated its railroad thereon. It awarded $1,500 to the plaintiff for past damages, and enjoined further operation unless the defendant should pay $6,000 as additional damages for the future easement of operation.

This appeal raises the questions whether (1) the defendant had· acquired a mere revocable permit or an easement for the laying of its tracks and operation of its trains across the land in question; and (2) whether, in case it had acquired only a revocable interest and its rightful occupancy ended prior to the beginning of this suit, the award of damages was excessive. The trial court held that the railroad acquired only revocable rights, and that upon revocation was subject to damages for an unlawful occupation. We must first determine what was the nature of the rights which the defendant acquired.

On July 29, 1915, the railroad received from the superintendent of public works of the state of New York a permit to construct, maintain, and operate at its own expense an extension of its railway line parallel with the Erie Canal from Utica to Whitesboro, passing under the southerly approach of the Yorkville bridge. The instrument recited that it was issued pursuant to authority delegated to the superintendent by the canal board on July 21, 1915, and that $10,000 was to be paid by the railroad to the superintendent as its share of additional work necessary to be performed in providing a passage for the railroad under the southerly approach of the bridge being constructed over the Erie Canal. The instrument went on to say that the payment by the railroad would not vest it with a right for any length of time to maintain its tracks through the bridge approach or upon the state land and would only vest it with such rights "as are covered by this revocable permit." Finally the instrument gave the superintendent "the right at any time to revoke and annul this permit and cause said Delaware, Lackawanna and Western Railroad Co. to remove said railway line, and any or all structures placed thereon under this permit at its own cost and expense from off State land; also the right on the part of the State of re-entry and re-occupancy of such lands covered by this permit, as the free and perfect use of said Canal at any future time may require, or as may be necessary for making any repairs, improvements or alterations in the same; or for any cause whatsoever."

The foregoing permit provided that pursuant to the Canal Law, § 35 (chapter 13, of the Laws of 1909, Consol. Laws N. Y. c. 5), the superintendent of public works should have supervisory power over so much of the railroad as might be constructed within ten rods of the canal or upon lands belonging to the state for canal purposes. In addition to the powers of the superintendent above mentioned, section 35 provided that no railroad corporation should construct its railroad over, or at any place within ten rods of, any canal belonging to the state unless it had written permission from the superintendent. It also provided that:

"All such permits heretofore or hereafter granted shall be revocable whenever the free and perfect use· of any such canal or feeder may so require, or if such rail-

road company shall fail to make any such repairs when required by the superintendent of public works. The railroad company using or occupying any bridge over the same shall, within a reasonable time after the service upon it, by the superintendent of public works, of written notice of such revocation, or to make such repairs, remove at its own cost and expense its railroad from such bridge and from the limits of ten rods of said canal or feeder."

When the railroad proposed to build the spur along the canal, a special act of the Legislature (chapter 584 of the Laws of New York 1915) was passed authorizing the superintendent to change the plans for the construction of the bridge over the Erie Canal in the village of Yorkville so as to provide facilities for construction of a railroad along the bank of the canal under the southerly approach to the bridge, in order to develop the barge canal terminal harbor from Schuyler street, Utica, to the second Yorkville bridge, and for that purpose to enter into contracts to cover the additional cost of the abutment and changes and to contract with any railroad company interested in the construction of a railroad under the southerly approach to such bridge to provide for any additional cost incurred in making provision for the construction of a railroad under such southerly approach. On the application of the defendant, the permit which we have before us was issued, the defendant paid the state $10,000 for the privilege of passing under the bridge, and expended the further sum of $6,618.77 in building its tracks. From the above it appears that the permit was granted under the Canal Law relating to the granting of permits by the superintendent of public works and also under the more specific provisions of chapter 584 of the Laws of 1915.

The state decided to abandon the canal at this point in 1922, and therefore conveyed to the city of Utica by quitclaim deed the property on which the defendant had constructed its tracks in 1915. On March 20, 1924, the plaintiff purchased from one Bach a parcel of land adjacent on the south to the parcel belonging to the city of Utica, and on December 9, 1927, received a conveyance from the latter of the strip on which the switch track had been constructed.

In June, 1922, the superintendent of public works published in the Utica Observer-Dispatch and the Albany Evening Journal notices directed to all persons, firms, or corporations occupying or maintaining (whether by virtue of permits or otherwise) buildings or structures of any character on, under, or across the canal lands in the city of Utica from the east city line to the easterly line of Third street and from the westerly line of Schuyler street to the west city line. The notices stated that he revoked each and every permit theretofore issued authorizing or empowering the use or occupancy of any part or portion of such canal lands, and that he required all persons and corporations forthwith to remove from said lands and to vacate and surrender to the state possession of the same. No personal service of this notice was given to the defendant, but it was published after the state had decided to abandon the canal lands and shortly before the conveyance to the city of Utica.

It is argued that section 35 of the Canal Law above quoted provided for the revocation of the permit only (1) whenever the free and perfect use of any canal or feeder might so require, (2) if the railroad failed to make any repairs required by the superintendent. The section also provided that the railroad company should remove the railroad from the limits of ten rods from the canal or feeder upon written notice of revocation. Neither condition making the permit revocable happened, but the right which the railroad enjoyed was, by its terms, only a revocable one, and under settled rules was revoked without the necessity of any notice when the state abandoned the canal lands and sold them to the city of Utica. Eckerson v. Crippen, 110 N. Y. 585, 18 N. E. 443, 1 L. R. A. 487; Eggleston v. New York & H. R. Co., 35 Barb. 162. This is because such a license is personal and will cease with the death of the grantor or the sale of the "dominant tenement." The license here contained a clause that it should not be "assigned * * * without the written permission of the Superintendent, * * *" and it contained no provision dealing with a situation where the canal lands were abandoned and sold, and such events evidently were not within the contemplation of the parties. The ordinary rule that a license is revoked if the grantor sells the land should therefore be applied.

We are likewise satisfied that the plaintiff was not estopped to assert his legal rights. It is said that the railroad had paid

a large sum of money to acquire the permit and had made other expenditures on the faith of it, but the $10,000 was merely to cover the expenses that the state was put to in making the changes necessary for the installation of the spur, and the railroad expended moneys in laying the tracks with full notice of the limitations contained in the instrument which fixed its rights. That instrument definitely provided for revocation for any cause whatever, and was effective without personal notice wherever the law gave rise to a revocation, as well as with notice in the particular instances specified in the permit. The defendant made no payment upon any misrepresentation of fact, and is not in position to invoke an estoppel.

■ It may also be suggested that a quitclaim deed by the state to the city of Utica ought not to be regarded as a revocation. The state, however, had abandoned the canal and by means of the quitclaim deed, which contained a "grant" of its interest, had transferred all its rights to the city of Utica. We cannot see that it makes any difference that the conveyance contained the words "quitclaim" and "grant" rather than a grant with a covenant of warranty which a state could hardly be expected to give. The first words would convey the interest of the state, which was a full title, just as well as the second.

Before coming to the question of damages, it is necessary to determine whether the plaintiff is entitled to recover under any circumstances. It is the rule of the Supreme Court and some of the states that where, as here, the unlawful occupant of the land is a railroad, empowered to condemn the property for corporate use, a subsequent vendee will take the land subject to the rights of the railroad, and that the owner of the property when the railroad enters into possession is the only person entitled to damages for the unlawful occupancy; in other words, because of the public interest, there is a right on the part of the unlawful occupant to meet actions of trespass or ejectment and suits to enjoin a continued trespass by the payment of an award in condemnation fixed as of the time when the trespass began. But the vendee of the latter takes subject to this right, and under the rule adopted in the Supreme Court has sustained no damages. Kindred v. Union Pacific R. Co., 225 U. S. 582, 596, 32 S. Ct. 780, 56 L. Ed. 1216; New York City v. Pine, 185 U. S. 93, 22 S. Ct. 592, 46 L. Ed. 820; Northern Pacific R. Co. v. Smith, 171 U. S. 260, 275, 18 S. Ct. 794, 43 L. Ed. 157; Roberts v. Northern Pacific R. Co., 158 U. S. 1, 11, 15 S. Ct. 756, 39 L. Ed. 873; Duke Power Co. v. Rutland, 60 F.(2d) 194, 197 (C. C. A. 4).

■ The rules of law laid down by the New York state courts, however, are those which must govern our disposition of the rights of the parties in real property in New York. Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228; Burgess v. Seligman, 107 U. S. 20, 23, 2 S. Ct. 10, 27 L. Ed. 359. The law of that state not only determines whether the owner, at the time when the unlawful occupation of the land began, or his vendee, is entitled to recover capital loss, but likewise the measure of damages. Duke Power Co. v. Rutland, 60 F.(2d) 194, 195 (C. C. A. 4).

■ The New York rule regards an unlawful occupant of premises, which might be acquired through right of eminent domain, as entitled to capitalize damages from future trespasses where the owner sues for an injunction, so that by paying them a lawful right of user will arise. Cox v. City of New York, 265 N. Y. 411, 193 N. E. 251; American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252, 270, 29 N. E. 302; Henderson v. New York Cent. R. Co., 78 N. Y. 423. At the same time, and in spite of the right of the occupant to condemn, it treats the unlawful possessor as so far a mere trespasser that the owner may recover loss of rental value between the date when he acquired ownership and the time of trial. Thus a succession of owners, the value of whose land has been injured by the trespasses of a corporation having the right of condemnation, may recover loss of rentals during the periods of their respective ownerships, but only the one who brings suit can recover the losses that may be fixed for future trespasses. Pappenheim v. Metropolitan E. R. Co., 128 N. Y. 436, 437, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486; Hughes v. Metropolitan E. R. Co., 130 N. Y. 14, 28, 28 N. E. 765. Accordingly, the plaintiff is entitled to recover damages for loss of rentals between the time he acquired the strip of land which the defendant unlawfully continued to hold and the date of trial, in addition to damages for the value of the easement at that date, the decree to provide that upon payment of the latter sum

the plaintiff shall convey the easement to the defendant. Shepard v. Manhattan Ry. Co., 169 N. Y. 160, 62 N. E. 151; Lynch v. Metropolitan E. R. Co., 129 N. Y. 274, 279, 29 N. E. 315, 15 L. R. A. 287, 26 Am. St. Rep. 523; Pappenheim v. Metropolitan E. R. Co., 128 N. Y. 436, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486; Kenkele v. Manhattan Ry. Co., 55 Hun, 398, 8 N. Y. S. 7; Otten v. Manhattan Ry. Co., 2 App. Div. 396, 37 N. Y. S. 982.

For the reasons we have given, we think that the trial court disposed of the rights of the parties correctly until it came to the question of damages. In dealing with damages, the judge stated that the proper measure was the difference in value between the canal land with and without the switch track operated by the defendant. Such was not the correct rule. The plaintiff had purchased the plot known as the Bach parcel on March 20, 1924, and had erected thereon a garage and gasoline filling station. He then owned no property on which the tracks of the defendant were laid, but on December 9, 1927, purchased a strip to the north of the Bach lot on the southerly part of which was the defendant's siding. The remainder of his purchase ran northerly to the Oriskany roadway, and he was enabled by the ownership of the two parcels to have access to Whitesboro street on the south of the Bach plot on which his garage was built and on the north to Oriskany roadway. Through his purchase of the canal lands, he became entitled to recover for loss of rental upon both plots occasioned by the unlawful presence of the railroad between the date when he acquired the canal lands and the time of trial, and as fee damages the difference between the value of both plots without the railroad and with it. Mayne v. Nassau Electric R. Co., 151 App. Div. 75, 136 N. Y. S. 375, affirmed 210 N. Y. 607, 104 N. E. 1134. In that case the plaintiff, in the year 1908, acquired property abutting on a street in Brooklyn and in 1909, by a separate conveyance, obtained the fee in the frontage to the middle of the street. She then sued the defendant, a corporation which had operated an electric surface railroad on the street since 1901, for an injunction and damages, and was allowed to recover the difference in the value of the premises as a whole with and without the railroad at the time of trial in addition to loss of rentals prior to that date, although she would have been entitled to no damages had she not purchased the fee to the center of the street. Putnam, J., who conducted the trial at Special Term, remarked (151 App. Div. 75, 136 N. Y. S. 375, 376):

"Had the defendants in 1901 elected to take condemnation proceedings against this frontage in the bed of the street, they might have lawfully acquired a right of way by paying nominal damages. Matter of Decatur St. [In re City of New York], 196 N. Y. 286, 89 N. E. 829. But as the defendants chose to go on, without obtaining the legal right over this strip, they took the chance of eventually having to meet the rights of its owners, either separately asserted, or effectively combined with the ownership of the land, to which this frontage was a natural adjunct. * * *" Shepard v. Manhattan Ry. Co., 169 N. Y. 160, 62 N. E. 151, affirming Shepard v. Metropolitan El. Ry. Co., 48 App. Div. 452, 62 N. Y. S. 977; Otten v. Manhattan Ry. Co., 2 App. Div. 396, 37 N. Y. S. 982; Kenkele v. Manhattan Ry. Co., 55 Hun, 398, 8 N. Y. S. 7.

Though we think the plaintiff was entitled to recover the difference between the value of both plots with and without the railroad, the evidence which he introduced for that purpose was entirely unsatisfactory. The burden of his contention was that the presence of the railroad prevented him from moving back and enlarging his garage so that he might serve automobiles on both streets and do this without the expense of building another garage to the north of the railroad track, with additional expenses of operation. He attempted to prove his loss by estimating the number of additional gallons of gasoline which he would have been able to sell if he could have carried out his purpose. This testimony was plainly speculative and afforded no proper foundation for rental or fee damages. The trial judge disregarded it, and estimated loss of rentals and fee damages only for the canal lands which the plaintiff had purchased in 1927. The testimony of plaintiff's experts was insufficient because based on plaintiff's estimate as to loss of gallonage on sales of gasoline through inability to carry out his plans for a larger gasoline station.

Even if it were conceded that the most advantageous use of the two plots was for a filling station, because they were situated between two highways, we can see no reason to suppose that the plaintiff suffered

any serious loss because of the presence of the siding. He testified that a good filling station could be built for $6,500, and, if so, the plot to the north of the railroad tracks was available for this use either by the plaintiff or by any lessee or vendee of his. There was really nothing to indicate that it would have been less costly to move back his present filling station and then enlarge it than to build another to the north of the siding.

The defendant's witnesses testified that the canal lands were best suited for an industrial site, and that the siding made them more valuable than otherwise because it gave the owner a chance to load and unload freight at his factory.

Whatever use might be made of the property, we can see little, if any, damage to the two plots from the siding which was rarely in use and furnished no dangerous obstacle to crossing.

 Under the New York law rental values of the plots can only be figured on what they would have been worth as they stood without the siding; that is to say, the plaintiff cannot recover damages that he might have sustained if he had put his property to other use or placed upon it other structures. Tallman v. Metropolitan E. R. Co., 121 N. Y. 119, 124, 23 N. E. 1134, 8 L. R. A. 173; New York Cent. R. Co. v. Maloney, 234 N. Y. 208, 137 N. E. 305. It likewise should be borne in mind that under the New York law an expert should not be asked what is the fee or rental value of the plots with and without the siding. He may be asked about their value 'with the siding, but, as he cannot know the value without the siding, such proof should be founded on testimony as to other plots in the neighborhood which were not encumbered by a railroad track. Moran v. Standard Oil Co., 211 N. Y. 187, 194, 105 N. E. 217; Roberts v. New York El. R. Co., 128 N. Y. 455, 28 N. E. 486, 13 L. R. A. 499.

 It may be true that the plaintiff suffered some loss by the actual occupation of the strip on which the defendant's tracks ran. We think his loss, if any, was little more than this, and that the award made by the court below for rental and fee damage was without adequate basis and plainly excessive.

The decree is reversed, and the cause is remanded for the purpose of taking proper proof as to damages.