## EMPIE et ux. v. UNITED STATES et al.

### No. 4990.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

H. Edmund Rodgers, of Wilmington, N. C., for appellants.

J. A. McNorton, of Wilmington, N. C., for appellees.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

The controversy in this case relates to the compensation for lands along the Cape Fear River in North Carolina flooded by the United States in connection with the erection and maintenance of a dam near Kelly, North Carolina, under the Act of Congress of April 24, 1888, Ch. 194, 25 Stat. 94, 33 U.S.C.A. § 591, and the Act of August 1, 1888, Ch. 728, 25 Stat. 357, 40 U.S.C.A. §§ 257, 258. A survey of the lands was made in the year 1937, under the Act of August 30, 1935, Ch. 831, 49 Stat. 1048; 33 U.S.C.A. § 546 a, and funds for the project were made available by an appropriation in the Act of June 11, 1938, Ch. 348, 52 Stat. 667. The question at issue is whether the compensation should be awarded to the owner of the lands at the time they were flooded or to the owner of the lands at the time that the condemnation proceedings were instituted by the United States and its title was perfected.

On or about October 25, 1934, the lands in question, which were part of a plantation of 815 acres owned by Theodore G. Empie, were submerged as the result of the construction of the dam. On October 18, 1937, Empie sold and conveyed the plantation, including the submerged portion, to P. W. Ray for $11,000, without reserving the right to receive compensation from the United States for the invasion of the property. On June 10, 1939, the United States filed its petition in this case wherein it sought to condemn a perpetual easement flowage over 11 tracts of land necessary for the maintenance and operation of the dam, including a tract No. 34 of 8.85 acres, and a tract No. 35 of 76.05 acres. It was alleged in this petition that according to the land records and other information in the possession of the United States, Ray and Empie had some right, title or interest in these tracts, and it was prayed that such judgments and decrees be entered as might be necessary to divest them and all other persons of all title and interest therein, upon the payment of just compensation.

To this petition Ray made no answer; but Empie filed an answer on January 2, 1940 in which he alleged that he was the owner of the whole plantation when the lands were flooded in 1934, and that he was thereby damaged not only by the permanent flooding of the tracts described, but also by the consequent loss of utility of the remainder of the plantation for stock raising and timber growing purposes. He claimed a loss of $6,274.22, computed by

deducting from the cost paid by him for the land and the improvements erected thereon the purchase price paid by P. W. Ray. Later Empie filed an amended petition in which his claim was increased to $14,000, representing the difference between $25,000, the estimated value of the plantation when it was partially submerged, and the price paid therefor by Ray.

The Commissioners appointed by the court to appraise the property described in the petition of condemnation in conformity with the provisions of the North Carolina statute, §§ 1720, 1721 and 1722 of the Code of North Carolina of 1939, assessed the damages at $88.50 to tract No. 34 and $760.50 to tract No. 35, and awarded the same to Ray. Empie filed exceptions to this report and Ray petitioned the court that he be adjudged the owner of the lands and entitled to immediate payment of the damages assessed. Upon the issue thus joined by the parties to this appeal the District Court decreed that Ray was entitled to the damages allowed in the report of the Commissioners, with interest from October 25, 1934, and that the counterclaim of Empie for damages against the United States should be dismissed.

It does not appear from the record that the court considered the doubtful question of the right of an owner to consequential damages to his land not actually invaded by the United States, or the jurisdiction of the court to pass on the counterclaim under the Tucker Act, 28 U.S.C.A. § 41 (20), in which the jurisdiction of the court is limited to claims not in excess of $10,000. It may be that this omission was due to the concession, made by Empie in the argument of this appeal, that unless his right to compensation for the tracts actually invaded is sustained, there is no legal basis for his counterclaim for consequential damages to the remainder of the plantation.

■ The general rule is that compensation for property taken in the exercise of the power of eminent domain is due to the owner at the time of the taking, and not to the owner at an earlier or later date. Danforth v. United States, 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240; Roberts v. Northern Pacific Railroad, 158 U.S. 1, 10, 15 S.Ct. 756, 39 L.Ed. 873; Kindred v. Union Pacific R. Co., 225 U.S. 582, 597,

32 S.Ct. 780, 56 L.Ed. 1216. Empie bases his claim on this rule, contending that the taking occurred when the land was actually invaded by the waters impounded by the dam which had been erected under federal authority; and he points to the decrease in the value of the plantation, apparently indicated by the price paid by Ray, as showing that the damages had then already occurred.

■ We think, however, that the case must be decided with reference to the conformity provisions of the federal statutes under which the condemnation proceedings were conducted. Therein it is provided that condemnation proceedings instituted by the United States for the condemnation of land for the improvement of rivers and harbors shall be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted. 33 U.S.C.A. § 591, 40 U.S. C.A. §§ 257, 258. The North Carolina statutes provide in effect, North Carolina Code 1939, § 1723, that exceptions may be filed by interested persons after the report of the Commissioners appointed to appraise the property has been filed, and that upon the final judgment in the proceedings and the payment by the condemnor of the sum adjudged into the office of the clerk of the court, "then and in that event all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such easement in such real estate" during the corporate existence of the condemnor.

■ We had recent occasion to examine these statutes, of condemnation as interpreted by the Supreme Court of North Carolina, in Duke Power Co. v. Toms, 4 Cir., 118 F.2d 443, 447, which involved the flooding of lands by a public service corporation, and we concluded that "in North Carolina, the right to flood the lands in derogation of plaintiffs' easement of access does not arise merely upon the erection of the structure causing the flooding, but upon the institution of proceedings looking to the award of due compensation; and, until such proceedings are instituted by one side or the other, the flooding constitutes a mere invasion of rights which pass with a conveyance of the property to which they are attached." See Livermon v. Roanoke, etc., R. R., 109 N.C. 52, 13 S.E. 734; Id., 114 N.C. 692, 19 S.E. 64;

484

Beal v. Durham & C. R. Co., 136 N.C. 298, 48 S.E. 674; Nantahala Power & Light Co. v. Whiting Mfg. Co., 209 N.C. 560, 184 S.E. 48.

 These observations are determinative of the present controversy. It is true that the instant proceeding was instituted by the United States under the authority of Acts of Congress, but these acts contain the conformity provision referred to; and for the purposes of this case, should be interpreted as if they included the provisions of the State statute. It is true that the conformity provision of the federal statutes relates to matters of procedure which are not necessarily binding on questions of substantive law. See, Brown v. United States, 263 U.S. 78, 87, 44 S.Ct. 92, 68 L.Ed. 171; United States v. Rogers, 255 U.S. 163, 169, 41 S.Ct. 281, 65 L.Ed. 566; Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664. But it is obvious that a procedural statute may specify the stage of a condemnation proceeding at which the taking of the property of the owner and the acquisition of title by the condemnor shall occur; and this is precisely what the North Carolina statute has been held to accomplish. In like manner it was held in Danforth v. United States, 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240, in a proceeding under the Flood Control Act of May 15, 1928, 45 Stat. 534, 33 U.S.C.A. § 702a et seq., that by reason of the terms of that statute the taking did not occur until the payment of the award by the condemnor.

 The same conclusion would be reached if it should be considered that the North Carolina rule was based upon a substantive law of property rather than upon the terms of the condemnation statute of the state. It was pointed out in Fletcher v. Delaware, L. & W. R. Co., 2 Cir., 79 F.2d 306, that while it is the rule of the Supreme Court and some of the States that the owner of property when the condemnor takes possession, is the only person entitled to damages for the unlawful occupancy, nevertheless such questions must be determined, as was done in that instance, in conformity with the State law. The court said page (310 of 79 F.2d): "The rules of law laid down by the New York state courts, however, are those which must govern our disposition of the rights of the parties in real property in New York.

The judgment of the District Court is affirmed.